1   JASON M. WUCETICH (STATE BAR NO. 222113)
    jason@wukolaw.com
2   DIMITRIOS V. KOROVILAS (STATE BAR NO. 247230)
    dimitri@wukolaw.com
3   WUCETICH & KOROVILAS LLP
    222 N. Pacific Coast Hwy., Suite 2000
4   El Segundo, CA 90245
    Telephone:    (310) 335-2001
5   Facsimile:    (310) 364-5201

6   MICHAEL S. MORRISON (SBN 205320)
    mmorrison@amfllp.com
7   ERIN A. LIM (SBN 323930)
    elim@amfllp.com
8   ALEXANDER MORRISON + FEHR LLP
    1900 Avenue of the Stars, Suite 900
9   Los Angeles, CA 90067
    Telephone:    (310) 394-0888
10  Facsimile:    (310) 394-0811

11  Attorneys for Plaintiffs
    WILLIAM MULLER and ANTONIO KNEZEVICH,
12  individually and on behalf of all others similarly situated

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16

17  WILLIAM MULLER and ANTONIO          CASE NO.
    KNEZEVICH, individually and on behalf
18  of all others similarly situated,       **CLASS ACTION**

19                                           **COMPLAINT FOR:**
                  Plaintiffs,
20                                              **(1) NEGLIGENCE**
          v.                                    **(2) NEGLIGENCE PER SE**
21                                              **(3) UNJUST ENRICHMENT**
    UKG INC.; and DOES 1 through 10,            **(4) DECLARATORY JUDGMENT**
22                                              **(5) BREACH OF CONTRACT**
                  Defendants.                   **(6) VIOLATION OF THE CALIFORNIA**
23                                                  **CONSUMER PRIVACY ACT, CAL.**
                                                    **CIV. CODE § 1798.150**
24                                              **(7) VIOLATION OF THE CALIFORNIA**
                                                    **CUSTOMER RECORDS ACT, CAL.**
25                                                  **CIV. CODE § 1798.84**
                                                **(8) VIOLATION OF THE CALIFORNIA**
26                                                  **UNFAIR COMPETITION LAW,**
                                                    **CAL. BUS. & PROF. CODE § 17200**
27
                                             **DEMAND FOR JURY TRIAL**
28

Plaintiffs William Muller and Antonio Knezevich ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby complain of defendant UKG Inc. as follows:

## SUMMARY OF THE CASE

1.      This putative class action arises from defendant UKG Inc.'s negligent failure to implement and maintain reasonable data security procedures and practices, and the consequent massive security breach of its systems that began in December 2021 and remains ongoing as of the date of this complaint.  UKG is a multi-billion dollar workforce management technology company that provides third-party human resources services, including timekeeping and payroll services, to companies around the globe.  In connection with those services, UKG collects, stores, and processes data for thousands of companies and millions of workers, including a multitude of companies and workers in California and throughout the nation.  UKG's clients form a broad cross section of corporate America and public organizations, including the likes of PepsiCo, Tesla, Gamestop, the University of California system, the County of Santa Clara, and many private and public hospital and healthcare organizations.

2.      Due to its lack of adequate security measures, UKG suffered a ransomware attack and data breach on or around December 11, 2021.  That breach not only exposed millions of workers' personal information to cybercriminals, but also crippled timekeeping and payroll systems for their employees, resulting in workers whose data was affected not being paid, being paid late, or being paid incorrectly.  To compound the matter, the timing of the breach left workers worrying about these financial issues and data concerns in the midst of the holiday season, wondering if they would be able to make ends meet and how long the problem would continue.  Those worries proved concrete, as UKG has yet to rectify its security problems and its systems remain disabled as of the date of this complaint.

3.      Plaintiffs Muller and Knezevich, California PepsiCo and Tesla workers whose data was impacted by the breach and who lost wages as a result, bring this class action complaint to redress these injuries, on behalf of themselves and a nationwide class and California subclass of similarly situated persons.  Plaintiffs assert claims on behalf of a nationwide class for negligence, negligence per se, unjust enrichment, declaratory judgment, and breach of contract, as well as

- 2 -

claims on behalf of a California subclass for violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, California Customer Records Act, Cal. Civ. Code § 1798.80 *et seq.*, and violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* Plaintiffs seek, among other things, compensatory damages, punitive and exemplary damages, injunctive relief, attorneys' fees, and costs of suit.  Plaintiffs further intend to amend this complaint to seek statutory damages on behalf of the California subclass upon expiration of the 30-day cure period pursuant to Cal. Civ. Code § 1798.150(b).

## PARTIES

4.      Plaintiff William Muller is a citizen and resident of the state of California who works as a truck driver for New Bern Transport Corporation, an exclusive carrier and wholly-owned subsidiary of PepsiCo.

5.      Plaintiff Antonio Knezevich is a citizen and resident of the state of California who works as a truck driver for Tesla, Inc.

6.      On information and belief, defendant UKG Inc. is a corporation organized and existed under the laws of the state of Delaware, with dual corporate headquarters in Weston, Florida, and Lowell, Massachusetts.

7.      Plaintiff is unaware of the true names and capacities, whether individual, association, partnership, corporation, other otherwise, of Does 1 through 10, and therefore sues these defendants by these fictitious names.  Each Doe defendant is the principal, agent, or employee of the other and was acting within the scope of such agency or employment to commit the acts alleged herein.  Each Doe defendant sued herein aided and abetted the other with the intent that each would be successful in their mutual endeavors.  Each Doe defendant contributed to Plaintiffs' damages and the statutory violations alleged herein.  Plaintiffs will amend this complaint to allege the Doe defendants' true names and capacities when they become known to Plaintiffs.

8.      Plaintiffs bring this action on behalf of themselves, on behalf of the general public as a Private Attorney General pursuant to California Code of Civil Procedure § 1021.5 and on behalf of a class and subclass of similarly situated persons pursuant Federal Rule of Civil

1    Procedure 23.

2                                    **JURISDICTION & VENUE**

3           9.      This Court has general personal jurisdiction over UKG Inc. because, at all relevant

4    times, it has had systematic and continuous contacts with the State of California.  UKG is

5    registered to do business in California with the California Secretary of State.  UKG regularly

6    contracts with a multitude of businesses and organizations in California to provide continuous and

7    ongoing human resources services, including timekeeping and payroll services.  And UKG does

8    in fact actually provide such continuous and ongoing human resources services to such companies

9    in California.

10          10.     Furthermore, this Court has specific personal jurisdiction over UKG Inc. because

11   the claims in this action stem from its specific contacts with the State of California — namely,

12   UKG's provision of payroll and other human resource services to a multitude of companies in

13   California, UKG's collection, maintenance, and processing of the personal data of Californians in

14   connection with such services, UKG's failure to implement and maintain reasonable security

15   procedures and practices with respect to that data, and the consequent ransomware attack and

16   security breach of such data in December 2021 that resulted from UKG's failures.

17          11.     This Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(d) in

18   that the mater in controversy exceeds the sum or value of $5,000,000, exclusive of interests and

19   costs, and is a class action in which members of the class defined herein include citizens of a

20   State different from the defendant.  Specifically, defendant UKG Inc. is a citizen of the states of

21   Delaware and/or Florida and/or Massachusetts, and the plaintiff class and/or subclasses defined

22   herein include citizens of other states, including California.

23          12.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391

24   (b)(1)-(2) and (c)(2) in that defendant UKG Inc. resides within this judicial district and,

25   alternatively, because a substantial part of the events or omissions giving rise to the claims

26   alleged herein occurred within this judicial district, specifically UKG's provision of payroll,

27   timekeeping, and other human resource services to a multitude of companies in California,

28   UKG's collection, maintenance, and processing of the personal data of Californians in connection

                                                  - 4 -

with such services, UKG's failure to implement and maintain reasonable security procedures and practices with respect to that data, and the consequent ransomware attack and security breach of such data in December 2021 that resulted from UKG's failure.  In addition, Plaintiff is informed and believes and thereon alleges that members of the class and subclass defined below reside in the Northern District.

### INTRADISTRICT ASSIGNMENT

13.     Assignment to the San Francisco/Oakland divisions is proper because a substantial part of the events or omissions which give rise to the claims herein occurred within San Francisco County.  Further, pursuant to Civil L. R. 3-2(c), all civil actions which arise in the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo, or Sonoma shall be assigned to the San Francisco/Oakland Divisions.  A substantial part of the events or omissions giving rise to the claims herein occurred also within these counties and therefore assignment to the San Francisco/Oakland divisions is proper.

### FACTUAL BACKGROUND

14.     UKG Inc. (an acronym for Ultimate Kronos Group) is a workforce management technology company with dual headquarters in Florida and Massachusetts that provides human resource services, including timekeeping and payroll services, to a multitude of companies worldwide.  The company was founded in April 2020 as the result of a merger between Ultimate Software and Kronos Incorporated.  UKG has reportedly been valued at $22 billion, generates approximately $3.5 billion in revenue per year, and is one of the largest cloud computing companies in the world.  Among other products in its suite of services, UKG provides services known as the "Kronos Private Cloud" and "UKG Workforce Central," which are timekeeping and payroll services.

15.     UKG provides its timekeeping and payroll services to a multitude of companies and organizations nationwide, including many that operate in California, the likes of which include, are not limited to, PepsiCo, Tesla, Gamestop, the University of California system, the County of Santa Clara, and many private and public hospital and healthcare organizations. UKG's timekeeping and payroll services affect thousands of employers and millions of

1   employees.

2         16.     In connection with those services, UKG collects, stores, and processes sensitive

3   personal data for thousands of companies and millions of workers.  According to its own privacy

4   policy, available at www.ukg.com/privacy, in connection with its services, UKG collects personal

5   information of individuals from a variety of sources, including directly from its customers and

6   their employees.  The privacy policy contains a section entitled "Customers' Information [and the

7   Information of Their Employees and Job Applicants]", which states that UKG collects data

8   including, but not limited to "name, company name, address, email address, time and attendance

9   and schedule information, and Social Security Numbers."  On information and belief, UKG also

10  collects banking information in connection with provision of direct deposit payroll processes as

11  well as employee identification numbers.  For example, UKG's website indicates that its services,

12  among other things, allow customers to "[e]nsure accurate, on-time pay to your people" and

13  "[q]uickly generate payroll documents, such as paychecks and direct-deposit files."[1]

14        17.     UKG knew that it was a prime target for hackers given the significant amount of

15  sensitive personal information processed through its computer data and storage systems.  Experts

16  studying cyber security routinely identify companies such as UKG that collect, process, and store

17  massive amounts of data for other companies as being particularly vulnerable to cyberattacks

18  because of the value of the personal information that they collect and maintain and due to the

19  massive scope of the adverse impact from a breach.  UKG's knowledge is underscored by the

20  massive number of data breaches that have occurred in recent years.

21        18.     Despite knowing the prevalence of data breaches, UKG failed to prioritize data

22  security by adopting reasonable data security measures to prevent and detect unauthorized access

23  to its highly sensitive systems and databases.  UKG has the resources to prevent a breach, but

24  neglected to adequately invest in data security, despite the growing number of well-publicized

25  breaches.  UKG failed to undertake adequate analyses and testing of its own systems, training of

26  its own personnel, and other data security measures to ensure vulnerabilities were avoided or

27  remedied and that Plaintiffs' and class members' data were protected.

28  _____
    [1] *See* https://www.ukg.com/resources/ukg-pro-pay-product-profile.pdf.

1    19.    In or around the weekend of December 11, 2021, UKG experienced a massive data

2    security breach as a result of a ransomware attack, which the company disclosed at the beginning

3    of the next week and which was widely reported by the media on December 17, 2021.[2]   The

4    breach impacted, among other things, UKG's "Kronos Private Cloud", which is a data storing

5    device for the company's services, including its timekeeping and payroll services.  The breach

6    came after a longstanding security flaw in widely used software across the internet, called Log4j,

7    was made public, opening the door in many companies' systems to hackers.  As a result of the

8    security breach, UKG's timekeeping and payroll services were disabled, crippling critical wage

9    payment infrastructure for millions of workers.

10    20.    In addition to payroll issues, the security breach has also resulted in data privacy

11    problems, as the data maintained by UKG includes social security numbers and, on information

12    and belief, banking information.  The City of Cleveland announced in a statement after the breach

13    that UKG alerted it that social security numbers of workers may have been stolen in by the

14    hackers inside UKG's network.[3]

15    21.    On information and belief, the personal information UKG collects and which was

16    impacted by the data breach includes an individual's first name or first initial and the individual's

17    last name in combination with one or more of the following data elements, with either the name

18    or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license

19    number, California identification card number, tax identification number, passport number,

20    military identification number, or other unique identification number issued on a government

21    document commonly used to verify the identity of a specific individual; (iii) account number or

22    credit or debit card number, in combination with any required security code, access code, or

23    password that would permit access to an individual's financial account; (iv) medical information;

24    (v) health insurance information; (vi) unique biometric data generated from measurements or

25    technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used

26    to authenticate a specific individual.

27    _____

[2] *See* https://www.cnn.com/2021/12/16/tech/kronos-ransomware-attack/index.html.

28    [3] *See* https://clecityhall.com/2021/12/13/city-of-cleveland-statement-on-ultimate-kronos-group-cybersecurity-incident/.

22.     As of the date of this complaint — over a month after the breach — UKG's systems remain disabled, its systems remain unsecured, and the harm resulting from the data breach remains unrectified.

23.     Because of the nature of the personal information stored or processed by UKG, Plaintiffs understand that all categories of personal information were subject to unauthorized access and exfiltration, theft, or disclosure.  Criminals would have no purpose for hacking UKG other than to exfiltrate or steal the coveted personal information stored or processed by UKG.

**Plaintiffs' Facts**

24.     Plaintiff William Muller works as a truck driver in California for New Bern Transport Corporation, an exclusive carrier and wholly-owned subsidiary of PepsiCo (New Bern and PepsiCo are collectively referred to herein as PepsiCo).  PepsiCo is a client of UKG and utilizes its human resources services, including timekeeping and payroll services, for employees of various entities under the PepsiCo corporate umbrella.  In connection with those services, UKG, through PepsiCo, collects, maintains, and processes sensitive personal information of Plaintiff, including, but not limited to, his name, company name, address, e-mail address, time and attendance and schedule information, social security number, employee identification number, and banking information.

25.     Plaintiff Antonio Knezevich works as a truck driver in California for Tesla, Inc. Tesla is a client of UKG and utilizes its human resources services, including timekeeping and payroll services, for employees.  In connection with those services, UKG collects, maintains, and processes sensitive personal information of Plaintiff, including, but not limited to, his name, company name, address, e-mail address, time and attendance and schedule information, social security number, employee identification number, and banking information.

26.     As a direct and foreseeable result of UKG's negligent failure to implement and maintain reasonable data security procedures and practices and the resultant breach of its systems, PepsiCo's and Tesla's timekeeping and payroll systems became crippled.  PepsiCo and Tesla lacked an adequate contingency plan to accurately pay workers, instead relying on UKG to remedy the breach and re-enable its systems.  To date, however, that has not occurred.  As a stop-

gap measure, since the breach PepsiCo and Tesla have adopted a practice of calculating wages due to employees based on, among other things, the averaging of their hours in the weeks prior to the breach.  That practice has proved woefully inadequate, resulting in Plaintiffs and employees like Plaintiffs not being fully paid for all time worked, not being paid overtime, being provided inaccurate wage statements or no wage statements at all, not being provided meal and rest breaks or compensation in lieu thereof, all in violation of California law.  As but one example, Plaintiffs and other PepsiCo and Tesla drivers worked extensive extra overtime hours since the breach due to it being the busy holiday season. However, PepsiCo's and Tesla's haphazard averaging techniques naturally failed to account for those overtime hours because, among other reasons, they were based on stale data from a less busy season earlier in the year.  Accordingly, Plaintiffs, along with other PepsiCo and Tesla employees, have experienced significant monetary loss as consequence of UKG's security breach.

27.     Members of the class defined herein have similarly experienced significant monetary loss as a result of the security breach because their employers have likewise failed to pay them on time, failed to pay them accurately, or failed to pay them at all due to the crippling of their employers' payroll systems that resulted from the UKG breach.

28.     As a direct and foreseeable result of UKG's negligent failure to implement and maintain reasonable data security procedures and practices and the resultant breach of its systems, Plaintiffs have also suffered harm in that their sensitive personal information has been exposed to cybercriminals and they has an increased risk and fear of identity theft and fraud.  This is not just a generalized anxiety of possible identify theft, privacy, or fraud concerns, but a concrete risk of harm resulting from an actual breach and accompanied by actual instances of reported problems suspect to stem from the breach.  In connection with counsel's investigation of this case, workers impacted by the breach, including PepsiCo employees, have reported hacking of their banking information in the weeks following the breach.  Twitter users have further reported that as a result of the UKG security breach, hackers obtained workers' phone numbers and began phishing scams.  For example, on December 26, 2021, at 1:58 P.M., Twitter user @_genosis_ tweeted: "For all those who have been affected by the Kronos hack please be aware of this.  They have

already managed to scam a couple hundred employees from another company so be on the look

out!" That twitter user posted an image of a text chain stating:

> Hey Team just a heads up. My sister in law is the HR director [for] Gatorade. They too
> have been hit by the KRONOS outage. She let me know yesterday that the people that
> hacked kronos did in fact get employee phone #'s and names. They are now calling
> PepsiCo/Gatorade employees and saying their work for kronos and are calling to verify
> employee info. They have managed to scam a couple hundred employees already. Make
> sure your teams [know] that there is ZERO reason anyone would ever call them and [ask]
> for their info.

Accordingly, Plaintiffs have suffered harm in the form of increased fear and risk of identity theft

and fraud resulting from the breach.

29.     Class members, like Plaintiffs, have also suffered harm in the form of increased

risk and fear of identity theft and fraud stemming from the breach. Class members are well aware

of the security breach event, as it has impacted their payroll and been widely reported in the

media. They are likewise well aware that their sensitive personal information, including social

security numbers and potentially banking information, risks being available to other

cybercriminals on the dark web.

## CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this action on behalf of themselves and all other similarly situated

persons pursuant to Federal Rule of Civil Procedure 23, including Rule 23(b)(1)-(3) and (c)(4).

Plaintiffs seek to represent the following class and subclasses:

> **Nationwide Class**. All persons in the United States whose personal information
> and/or payroll systems were compromised in or as a result of the data breach of
> UKG Inc. announced on or around December 11, 2021.

> **California Subclass.** All persons residing in California whose personal
> information and/or payroll systems were compromised in or as a result of the data
> breach of UKG Inc. announced on or around December 11, 2021.

Excluded from the class are the following individuals and/or entities: Defendant and its parents,

subsidiaries, affiliates, officers, directors, or employees, and any entity in which Defendant has a

controlling interest; all individuals who make a timely request to be excluded from this

proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of

this litigation, as well as their immediate family members.

31.     Plaintiffs reserve the right to amend or modify the class definitions with greater particularity or further division into subclasses or limitation to particular issues.

32.     This action has been brought and may be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable, as described further below:

   a.   <u>Numerosity</u>: The potential members of the class as defined are so numerous that joinder of all members of the class is impracticable.  While the precise number of class members at issue has not been determined, Plaintiffs believe the security breach affected tens of millions of workers nationwide and at least many tens of thousands within California.

   b.   <u>Commonality</u>: There are questions of law and fact common to Plaintiffs and the class that predominate over any questions affecting only the individual members of the class.  The common questions of law and fact include, but are not limited to, the following:

      i.   Whether UKG owed a duty to Plaintiffs and class members to exercise due care in collecting, storing, processing, and safeguarding their personal information;

      ii.   Whether UKG owed a legal duty to Plaintiffs and class members to exercise due care to avoid sudden disruption of its human resources services, including their timekeeping and payroll services;

      iii.   Whether UKG breached those duties;

      iv.   Whether UKG implemented and maintained reasonable security procedures and practices appropriate to the nature of the personal information of class members;

      v.   Whether UKG acted negligently in connection with the monitoring and/or protecting of Plaintiffs' and class members' personal information;

vi.   Whether UKG knew or should have known that they did not employ reasonable measures to keep Plaintiffs' and class members' personal information secure and prevent loss or misuse of that personal information;

vii.   Whether UKG adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

viii.   Whether UKG caused Plaintiffs and class members damages;

ix.   Whether the damages UKG caused to Plaintiffs and class members include lost wages resulting from the disabling of UKG's timekeeping and payroll services;

x.   Whether the damages UKG caused to Plaintiffs and class members includes the increased risk and fear of identity theft and fraud resulting from the access and exfiltration, theft, or disclosure of their personal information;

xi.   Whether UKG violated the law by failing to promptly notify class members that their personal information had been compromised;

xii.   Whether Plaintiffs and class members are entitled to credit monitoring and other monetary relief;

xiii.   Whether UKG's failure to implement and maintain reasonable security procedures and practices constitutes negligence;

xiv.   Whether UKG's failure to implement and maintain reasonable security procedures and practices constitutes negligence per se;

xv.   Whether UKG's failure to implement and maintain reasonable security procedures and practices constitutes violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a);

xvi.   Whether UKG's failure to implement and maintain reasonable security procedures and practices constitutes violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; as well as violations of the laws of

- 12 -

the state of Maryland, Delaware, and Florida (the states of which UKG is a citizen), including:  the Massachusetts Data Security Statute, Mass. Gen. Laws. Ann. Ch. 93A, §§ 1-2(a), 201 Mass. Code Regs. 17.01-05, the Delaware Computer Security Breach Act, 6 Del. Code Ann. §§ 12B-102, *et seq.*, the Delaware Consumer Fraud Act, 6 Del. Code §§ 2513 *et seq.*, and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*

    xvii.  Whether the California subclass is entitled to actual pecuniary damages under the private rights of action in the California Customer Records Act, Cal. Civ. Code § 1798.84 and the California Consumer Privacy Act, Civ. Code § 1798.150, and the proper measure of such damages.

  c.  <u>Typicality</u>.  The claims of the named Plaintiffs are typical of the claims of the class members because all had their personal information and/or payroll systems compromised as a result of UKG's failure to implement and maintain reasonable security measures and the consequent data breach.

  d.  <u>Adequacy of Representation</u>.  Plaintiffs will fairly and adequately represent the interests of the class.  Counsel who represent Plaintiffs are experienced and competent in consumer and employment class actions, as well as various other types of complex and class litigation.

  e.  <u>Superiority and Manageabilty</u>.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Plaintiffs is not practicable, and questions of law and fact common to Plaintiffs predominate over any questions affecting only Plaintiff.  Each Plaintiff has been damaged and is entitled to recovery by reason of Defendant's unlawful failure to adequately safeguard their data.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  As any civil penalty awarded to any individual class member may be small, the expense and burden of individual

- 13 -

litigation make it impracticable for most class members to seek redress individually.  It is also unlikely that any individual consumer would bring an action solely on behalf of himself or herself pursuant to the theories asserted herein.  Additionally, the proper measure of civil penalties for each wrongful act will be answered in a consistent and uniform manner.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action, as Defendant's records will readily enable the Court and parties to ascertain affected companies and their employees.

33.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the class as a whole.

34.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of the matters and the parties' interests therein.  Such particular issues include, but are not limited to:

      a.  Whether UKG owed a legal duty to Plaintiffs and class members to exercise due care in collecting, storing, processing, using, and safeguarding their personal information;

      b.  Whether UKG breached that legal duty to Plaintiffs and class members to exercise due care in collecting, storing, processing, using, and safeguarding their personal information;

      c.  Whether UKG owed a legal duty to Plaintiffs and class members to exercise due care to avoid sudden disruption of its human resources services, including their timekeeping and payroll services;

d.   Whether UKG breached that legal duty to Plaintiffs and class members to exercise
due care to avoid sudden disruption of its human resources services, including
their timekeeping and payroll services;

e.   Whether UKG failed to comply with their own policies and applicable laws,
regulations, and industry standards relating to data security;

f.   Whether UKG failed to implement and maintain reasonable security procedures
and practices appropriate to the nature of the personal information compromised in
the breach; and

g.   Whether class members are entitled to actual damages, credit monitoring,
injunctive relief, and/or punitive damages as a result of UKG's wrongful conduct
as alleged herein.

## FIRST CAUSE OF ACTION

**(Negligence, By Plaintiffs and the Nationwide Class Against All Defendants)**

35.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully
set forth herein.

36.   UKG owed a duty to Plaintiffs and class members to exercise reasonable care in
obtaining, storing, using, processing, deleting and safeguarding their personal information in its
possession from being compromised, stolen, accessed, and/or misused by unauthorized persons.
That duty includes a duty to implement and maintain reasonable security procedures and practices
appropriate to the nature of the personal information that were compliant with and/or better than
industry-standard practices.  UKG's duties included a duty to design, maintain, and test its
security systems to ensure that Plaintiffs' and class members' personal information was
adequately secured and protected, to implement processes that would detect a breach of its
security system in a timely manner, to timely act upon warnings and alerts, including those
generated by its own security systems regarding intrusions to its networks, and to promptly,
properly, and fully notify its customers, Plaintiffs, and class members of any data breach.

37.   UKG's duties to use reasonable care arose from several sources, including but not
limited to those described below.

- 15 -

1       38.    UKG had a common law duty to prevent foreseeable harm to others.  This duty

2    existed because Plaintiffs and class members were the foreseeable and probable victims of any

3    inadequate security practices.  In fact, not only was it foreseeable that Plaintiffs and class

4    members would be harmed by the failure to protect their personal information because hackers

5    routinely attempt to steal such information and use it for nefarious purposes, but UKG also knew

6    that it was more likely than not Plaintiffs and other class members would be harmed.

7       39.    UKG's duty also arose under Section 5 of the Federal Trade Commission Act, 15

8    U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as

9    interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to

10   protect personal information by companies such as UKG.

11      40.    Various FTC publications and data security breach orders further form the basis of

12   UKG's duty.  According to the FTC, the need for data security should be factored into all

13   business decision making.[4]  In 2016, the FTC updated its publication, *Protecting Personal*

14   *Information: A Guide for Business*, which established guidelines for fundamental data security

15   principles and practices for business.[5]  Among other things, the guidelines note that businesses

16   should protect the personal customer information that they keep; properly dispose of personal

17   information that is no longer needed; encrypt information stored on computer networks;

18   understand their network's vulnerabilities; and implement policies to correct security problems.

19   The guidelines also recommend that businesses use an intrusion detection system to expose a

20   breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is

21   attempting to hack the system; watch for large amounts of data being transmitted from the

22   system; and have a response plan ready in the event of a breach.  Additionally, the FTC

23   recommends that companies limit access to sensitive data, require complex passwords to be used

24   on networks, use industry-tested methods for security, monitor for suspicious activity on the

25   network, and verify that third-party service providers have implemented reasonable security

26

[4] *Start with Security, A Guide for Business*, FTC (June 2015),
https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
27  [5] *Protecting Personal Information, A Guide for Business*, FTC (Oct. 2016),
https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-
28  informaiton.pdf.

1   measures.

2       41.     In addition, individual states have enacted statutes based on the FTC Act that also

3   created a duty, including, among others, those referenced in paragraph 32.b.xvi.

4       42.     UKG's duty also arose from its unique position as one of the largest cloud

5   computing companies in the world whose services constitute a linchpin of the payroll services of

6   a substantial fraction of the nation.  As set forth above, the data breach herein affected thousands

7   of companies and millions of employees.  UKG undertakes its collection of sensitive personal

8   information of employees generally through direct relationships between UKG and employers,

9   generally without the direct consent of employees who have no option but to be affected by

10  UKG's actions.  Plaintiffs and class members cannot "opt out" of UKG"s activities.  UKG holds

11  itself out as a trusted steward of consumer and employee data, and thereby assumed a duty to

12  reasonably protect that data.  Plaintiffs and class members, and indeed the general public,

13  collectively repose a trust and confidence in UKG to perform that stewardship carefully.

14  Otherwise consumers and employees would be powerless to fully protect their interests regarding

15  their personal information, which is controlled by UKG.  Because of its crucial role within the

16  payroll system, UKG was in a unique and superior position to protect against the harm suffered

17  by Plaintiffs and class members as a result of the UKG data breach.  By obtaining, collecting,

18  using, and deriving a benefit from Plaintiffs' and class members' personal information, UKG

19  assumed legal and equitable duties and knew or should have known that it was responsible for

20  protecting Plaintiffs' and class members' personal information from disclosure.

21      43.     UKG admits that it has an enormous responsibility to protect employee data, that it

22  is entrusted with this data, and that it did not live up to its responsibilities to protect the personal

23  information at issue here.

24      44.     UKG's privacy policy has a specific "Security" section which states:

25          To prevent unauthorized access or disclosure, to maintain data accuracy, and to
26          allow only the appropriate use of your PI, UKG utilizes physical, technical, and
            administrative controls and procedures to safeguard the information we collect.

27          To protect the confidentiality, integrity, availability and resilience of your PI, we
28          utilize a variety of physical and logical access controls, firewalls, intrusion

> detection/prevention systems, network and database monitoring, anti-virus, and backup systems. We use encrypted sessions when collecting or transferring sensitive data through our websites.
>
> We limit access to your PI and data to those persons who have a specific business purpose for maintaining and processing such information. Our employees who have been granted access to your PI are made aware of their responsibilities to protect the confidentiality, integrity, and availability of that information and have been provided training and instruction on how to do so.

Accordingly, UKG admits that it has a duty and responsibility to adequately safeguard Plaintiffs' and class members' personal information.

45.     UKG also had a duty to safeguard the personal information of Plaintiffs and class members and to promptly notify them and their employers of a breach because of state laws and statutes that require UKG to reasonably safeguard personal information, as detailed herein, including Cal. Civ. Code § 1798.80 *et seq.*

46.     Timely notification was required, appropriate, and necessary so that, among other things, Plaintiffs and class members could take appropriate measures to freeze or lock their credit profiles, cancel or change usernames or passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, develop alternative timekeeping methods or other tacks to avoid untimely or inaccurate wage payments, and take other steps to mitigate or ameliorate the damages caused by UKG's misconduct.

47.     UKG also owed a duty to Plaintiffs and class members to exercise reasonable care to avoid sudden disruption of their human resources services, including their timekeeping and payroll services.  UKG undertook of its own volition responsibility to provide continuous and ongoing timekeeping and payroll services to the employers of Plaintiffs and class members, knowing that such services were for the benefit of making timely wage payments to them, among other things, and that any disruption, particularly any sudden disruption, would cause Plaintiffs and class members harm.

48.     Plaintiffs and class members have taken reasonable steps to maintain the

1   confidentiality of their personal information.

2       49.     UKG breached the duties it owed to Plaintiffs and class members described above

3   and thus was negligent.  UKG breached these duties by, among other things, failing to:  (a)

4   exercise reasonable care and implement adequate security systems, protocols and practices

5   sufficient to protect the personal information of Plaintiffs and class members; (b) prevent the

6   breach; (c) detect the breach while it was ongoing; (d) maintain security systems consistent with

7   industry standards and necessary to avoid the disabling of payroll systems for thousands of

8   companies and millions of workers; (e) disclose that Plaintiffs' and class members' personal

9   information in UKG's possession had been or was reasonably believed to have been stolen or

10  compromised; and (f) avoid disruption and continued disruption of its timekeeping and payroll

11  services.

12      50.     UKG knew or should have known of the risks of collecting and storing personal

13  information and the importance of maintaining secure systems, especially in light of the

14  increasing frequency of ransomware attacks and known coding vulnerabilities previously reported

15  by news media and Alibaba earlier in 2021.  Specifically, among other things, the Log4Shell is a

16  software vulnerability in Apache Log4j 2, a popular Java library for logging error messages in

17  applications.  The vulnerability, published prior to the data breach, enables an attacker to take

18  control of a device on the internet if the device is running certain versions of Log4j 2.  These

19  vulnerabilities had been reported earlier in 2021.  The sheer scope of UKG's operations, which

20  affect thousands of employers and millions of employees, further shows that UKG knew or

21  should have known of the risks and possible harm that could result from its failure to implement

22  and maintain reasonable security measures.  On information and belief this is but one of the

23  several vulnerabilities that plagued UKG's systems and led to the data breach.

24      51.     Through UKG's acts and omissions described in this complaint, including UKG's

25  failure to provide adequate security and its failure to protect the personal information of Plaintiffs

26  and class members from being foreseeably captured, accessed, exfiltrated, stolen, disclosed,

27  accessed, and misused, UKG unlawfully breached its duty to use reasonable care to adequately

28  protect and secure Plaintiffs' and class members' personal information.  UKG further failed to

- 19 -

1    timely and accurately disclose to customers, Plaintiffs, and class members that their personal

2    information had been improperly acquired or access and was available for sale to criminals on the

3    dark web.  Indeed, Plaintiffs and class members received no notice of the breach directly from

4    UKG.  UKG issued a public statement and in some instances issued notices to its customers (the

5    employers of Plaintiffs and class members) but failed to adequately describe all types of personal

6    information that were exfiltrated, stolen, disclosed, or accessed by the ransomware attackers.

7         52.    UKG further breached its duty to Plaintiffs and Class members to exercise

8    reasonable care to avoid sudden disruption of their human resources services, including their

9    timekeeping and payroll services, by allowing its systems to remain disabled for multiple weeks

10   (and counting) and failing to adequately and timely remedy its security vulnerabilities.

11        53.    But for UKG's wrongful and negligent breach of its duties owed to Plaintiffs and

12   class members, their personal information would not have been compromised nor their

13   timekeeping and payroll services disabled.

14        54.    Plaintiffs and class members relied on UKG to keep their personal information

15   confidential and securely maintained, and to use this information for business purposes only, and

16   to make only authorized disclosures of this information.

17        55.    As a direct and proximate result of UKG's negligence, Plaintiffs and class

18   members have been injured as described herein, and are entitled to damages, including

19   compensatory, punitive, and nominal damages, in an amount to be proven at trial.  As a result of

20   UKG's failure to protect Plaintiffs' and class members' personal information, Plaintiffs' and class

21   members' personal information has been accessed by malicious cybercriminals.  Plaintiffs' and

22   the class members' injuries include:

23             a.  damages stemming from Plaintiffs and class members not being fully paid for all

24                 time worked, not being paid overtime, being provided inaccurate wage statements

25                 or no wage statements at all, not being provided meal and rest breaks or

26                 compensation in lieu thereof, all in violation of federal and state laws;

27             b.  damages stemming from the fear and anxiety of Plaintiffs and class members

28                 concerning whether they would be fully, timely, and accurately paid for all time

worked during the 2021-2022 holiday season, and regarding how long such disruptions to their payroll systems would continue;

c.   theft of their personal information;

d.   costs associated with requested credit freezes;

e.   costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

f.   costs associated with purchasing credit monitoring and identity theft protection services;

g.   unauthorized charges and loss of use of and access to their financial account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

h.   lowered credit scores resulting from credit inquiries following fraudulent activities;

i.   costs associated with time spent and loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

j.   the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their personal information being placed in the hands of criminals;

k.   damages to and diminution of value of their personal information entrusted, directly or indirectly, to UKG with the mutual understanding that UKG would safeguard Plaintiffs' and the class members' data against theft and not allow access and misuse of their data by others;

l.   continued risk of exposure to hackers and thieves of their personal information, which remains in UKG's possession and is subject to further breaches so long as UKG fails to undertake appropriate and adequate measures to protect Plaintiffs and class members;

m.   loss of the inherent value of their personal information;

n.   and other significant additional risk of identity theft, financial fraud, and other identity-related fraud in the indefinite future.

## SECOND CAUSE OF ACTION

**(Negligence Per Se, By Plaintiffs and the Nationwide Class Against All Defendants)**

56.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

57.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal information by companies such as UKG.  Various FTC publications and data security breach orders further form the basis of UKG's duty.  In addition, individual states have enacted statutes based on the FTC Act that also created a duty.

58.     UKG violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect personal information and not complying with industry standards.  UKG's conduct was particularly unreasonable given the nature and amount of personal information it obtained and stored and the foreseeable consequences of a data breach at one of the largest cloud computing companies in the world handling timekeeping and payroll data for thousands of companies and millions of employees.

59.     UKG's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

60.     Plaintiffs and class members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was meant to protect.

61.     Moreover, the harm that has occurred is the type of harm that the FTC Act (and

- 22 -

similar state statutes) was intended to guard against.  Indeed, the FTC has pursued over fifty

enforcement actions against businesses which, as a result of their failure to employ reasonable

data security measures and avoid unfair and deceptive practices, caused the same harm suffered

by Plaintiffs and the class.

62.      UKG is a citizen of the states of Massachusetts, Delaware, and/or Florida, in that it

incorporated in Delaware and operates dual headquarters in Massachusetts and Florida.  All of its

activities are therefore subject to the laws of these states.  UKG's actions as described herein

constitute unfair methods of competition and unfair and deceptive acts and practices in the

conduct of trade or commerce, in violation of Mass. Gen. Laws. Ann. Ch. 93A, §§ 1-2(a), as well

as violations of the Massachusetts Data Security statute and its implementing regulations, Mass.

Gen. Laws. Ann. Ch. 93H, § 2; and 201 Mass. Code Regs. 17.01-05, violations of the Delaware

Computer Security Breach Act, 6 Del. Code Ann. §§ 12B-102, *et seq.*, the Delaware Consumer

Fraud Act, 6 Del. Code §§ 2513 *et seq.*, and violations of Florida's Deceptive and Unfair Trade

Practices Act, Fla. Stat. §§ 501.201 *et seq.*, specifically in that UKG misrepresented that it would

protect the privacy and confidentiality of Plaintiffs and class members' personal information,

including by implementing and maintaining reasonable security measures, then failed to do so,

and further failed to promptly, fully, and adequately notify Plaintiffs and class members of the

breach.  UKG's violations of these statutes constitute negligence *per se*.  Plaintiffs and class

members are within the class of persons these statutes were meant to protect.  Moreover, the harm

that has occurred is the type of harm that these state statutes intended to guard against.

63.      As a direct and proximate result of UKG's negligence, Plaintiffs and class

members have been injured as described herein and in paragraph 55 above, and are entitled to

damages, including compensatory, punitive, and nominal damages, in an amount to be proven at

trial.

### **THIRD CAUSE OF ACTION**

**(Unjust Enrichment, By Plaintiffs and the Nationwide Class Against All Defendants)**

64.      Plaintiffs reallege and incorporate by reference the preceding paragraphs as though

fully set forth herein.

- 23 -

1    65.    Plaintiffs and class members have an interest, both equitable and legal, in the

2    personal information about them that was conferred upon, collected by, and maintained by UGK

3    and that was ultimately converted, stolen, removed, deleted, exfiltrated, or disclosed in the UKG

4    data breach.  This personal information was conferred on UKG in most cases by third parties,

5    class members' employers, but in some instances directly by Plaintiffs and class members

6    themselves.

7    66.    UKG was benefitted by the conferral upon it of the personal information

8    pertaining to Plaintiffs and class members and by its ability to retain and use that information.

9    UKG understood that it was in fact so benefitted.

10    67.    UKG also understood and appreciated that the personal information pertaining to

11    Plaintiffs and class members was private and confidential and its value depended upon UKG

12    maintaining the privacy, security, and confidentiality of that personal information.

13    68.    But for UKG's willingness and commitment to maintain its privacy, security, and

14    confidentiality, that personal information would not have been transferred to and entrusted with

15    UKG.  Further, if UKG has disclosed that its data security measures were inadequate, UKG

16    would not have been permitted to continue in operation by regulators, its shareholders, and

17    participants in the marketplace.

18    69.    As a result of UKG's wrongful conduct as alleged in this Complaint (including

19    among other things its failure to employ adequate data security measures, its continued

20    maintenance and use of the personal information belonging to Plaintiffs and class members

21    without having adequate data security measures, and its other conduct in facilitating the theft of

22    that personal information), UKG has been unjustly enriched at the expense of, and to the

23    detriment of, Plaintiffs and class members.  Among other things, UKG has and continues to

24    benefit and profit from the sale of the personal information and from its contracts to use that

25    personal information to process timekeeping and payroll, while the value to Plaintiffs and class

26    members has been diminished.

27    70.    UKG's unjust enrichment is traceable to, and resulted directly and proximately

28    from, the conduct alleged herein, including the compiling and use of Plaintiffs' and Class

members' sensitive personal information, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

71.    Under the common law doctrine of unjust enrichment, it is inequitable for UKG to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and class members in an unfair and unconscionable manner.  UKG's retention of such benefits under circumstances making such retention inequitable constitutes unjust enrichment.

72.    The benefit conferred upon, received, and enjoyed by UKG was not conferred officiously or gratuitously, and it would be inequitable and unjust for UKG to retain the benefit.

73.    UKG is therefore liable to Plaintiffs and class members for restitution in the amount of the benefit conferred on UKG as a result of its wrongful conduct, including specifically the value to UKG of the personal information that was stolen and the payroll systems that were compromised in the UKG data breach and the profits UKG is receiving from the use, sale, and processing of that information, including any profits from its timekeeping and payroll services.

## FOURTH CAUSE OF ACTION

**(Declaratory Judgment, By Plaintiffs and the Nationwide Class Against All Defendants)**

74.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

75.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this complaint.

76.    An actual controversy has arisen in the wake of the UKG data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers and their employees' personal information, to avoid disruption of timekeeping and payroll services, and regarding whether UKG is currently maintaining data security measures adequate to protect Plaintiffs and class members from further data breaches that compromise their personal

1    information and timekeeping and payroll services.  Plaintiffs allege that UKG's data security

2    measures remain inadequate.  UKG denies these allegations.  Plaintiffs continue to suffer injury

3    as a result of the compromise of their personal information and remain at imminent risk that

4    further compromises of their personal information will occur in the future.

5        77.    Pursuant to its authority under the Declaratory Judgment Act, this Court should

6    enter a judgment declaring, among other things, the following:

7            a.    UKG continues to owe a legal duty to secure consumers' and employees personal

8                information, including Plaintiffs' and class members' personal information, to

9                timely notify them of a data breach under the common law, Section 5 of the FTC

10               Act, and various state statutes, and to avoid disruption to their timekeeping and

11               payroll services;

12           b.    UKG continues to breach this legal duty by failing to employ reasonable measures

13               to secure Plaintiffs' and class members' personal information and by failing to

14               avoid disruption of their timekeeping and payroll services.

15       78.    The Court should issue corresponding prospective injunctive relief requiring UKG

16   to employ adequate security protocols consistent with law and industry standards to protect

17   Plaintiffs' and class members' personal information and timekeeping and payroll services.

18       79.    If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an

19   adequate legal remedy, in the event of another data breach at UKG.  The risk of another such

20   breach is real, immediate, and substantial.  If another breach at UKG occurs, Plaintiffs will not

21   have an adequate remedy at law because many of the resulting injuries are not readily quantified

22   and they will be forced to bring multiple lawsuits to rectify the same conduct.

23       80.    The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to

24   UKG if an injunction is issued.  Among other things, if another massive data breach occurs at

25   UKG, Plaintiffs and class members will likely be subjected to substantial identity theft and other

26   damage, including continuing lost wages from timekeeping and payroll interruptions.  On the

27   other hand, the cost to UKG of complying with an injunction by employing reasonable

28   prospective data security measures is relatively minimal, and UKG has a pre-existing legal

obligation to employ such measures.

81.     Issuance of the requested injunction will not disserve the public interest.  To the contrary, such an injunction would benefit the public by preventing another data breach at UKG, thus eliminating the additional injuries that would result to Plaintiffs and the millions of class members whose confidential information would be further compromised.

## FIFTH CAUSE OF ACTION

**(Breach of Contract, By Plaintiffs and the Nationwide Class Against All Defendants)**

82.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

83.     UKG's privacy policy is an agreement between UKG and its customers as well as the employees of its customers, who include Plaintiffs and class members, and who provided their personal information to UKG.

84.     UKG's privacy policy has a "Security" section which specifically states:

> To prevent unauthorized access or disclosure, to maintain data accuracy, and to allow only the appropriate use of your PI, UKG utilizes physical, technical, and administrative controls and procedures to safeguard the information we collect.

> To protect the confidentiality, integrity, availability and resilience of your PI, we utilize a variety of physical and logical access controls, firewalls, intrusion detection/prevention systems, network and database monitoring, anti-virus, and backup systems. We use encrypted sessions when collecting or transferring sensitive data through our websites.

> We limit access to your PI and data to those persons who have a specific business purpose for maintaining and processing such information. Our employees who have been granted access to your PI are made aware of their responsibilities to protect the confidentiality, integrity, and availability of that information and have been provided training and instruction on how to do so.

85.     This privacy policy constitutes a contract or implied contract between UKG, on the one hand, and Plaintiffs and class members, on the other hand.  This contract or implied contract was formed when Plaintiffs and Class members entrusted their personal information to their employers, who in turn entrusted it to UKG, and in instances when Plaintiffs and class members provided their personal information directly to UKG.  UKG specifically contracted to implement

- 27 -

and maintain reasonable security measures and to limit access to Plaintiffs' and class members' data, and undertook a responsibility and contractual obligation to do so. UKG undertook these duties specifically for the purpose of facilitating continuing and ongoing payroll and timekeeping services for Plaintiffs and class members.

86. Plaintiffs and class members are further third-party beneficiaries of any such contract between their employers and UKG.

87. Plaintiffs and class members fully performed their obligations under the contracts or implied contracts with UKG.

88. UKG breached its contracts or implied contracts with Plaintiffs and class members by failing to protect their personal information. Specifically, it failed to take reasonable steps to use safe and secure systems to protect that information, failed to have appropriate security protocols and measures in place to protect that information, such as adequate internal and external firewalls, physical security, technological security measures, and encryption, disclosed that information to unauthorized third parties, failed to promptly alert or give notice of the breach to Plaintiffs and class members, and failed to adequately continue to provide ongoing payroll and maintenance services to Plaintiffs and class members.

89. As a direct and proximate result of UKG's breaches of contract, Plaintiffs and class members sustained actual losses, damages, and consequential damages as described above, and are also entitled to recover nominal damages.

**SIXTH CAUSE OF ACTION**

**(Violation of the California Consumer Privacy Act,
Cal. Civ. Code §§ 1798.100 *et seq.*, § 1798.150(a)
By Plaintiffs and the California Subclass Against All Defendants)**

90. Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

91. The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA. Section 1798.150(a) specifically provides:

Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:

(A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

(B) Injunctive or declaratory relief.

(C) Any other relief the court deems proper.

92.     UKG is a "business" under § 1798.140(b) in that it is a corporation organized for profit or financial benefit of its shareholders or other owners, with gross revenue in excess of $25 million.  Indeed, its revenue reaches into the many billions per year.

93.     Plaintiffs and California subclass members are covered "consumers" under § 1798.140(g) in that they are natural persons who are California residents.

94.     The personal information of Plaintiffs and the California subclass at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in that the personal information UKG collects and which was impacted by the data breach includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

95.     UKG knew or should have known that its computer systems and data security practices were inadequate to safeguard the California subclass's personal information and that the risk of a data breach or theft was highly likely.  UKG failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiffs and the California subclass. Specifically, UKG subjected Plaintiffs' and the California subclass's nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the UKG's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

96.     As a direct and proximate result of UKG's violation of its duty, the unauthorized access and exfiltration, theft, or disclosure of Plaintiffs' and class members' personal information included exfiltration, theft, or disclosure through UKG's servers, systems, and website, and/or the dark web, where hackers further disclosed UKG's customers' and their employees' personal information.

97.     As a direct and proximate result of UKG's acts, Plaintiffs and the California subclass were injured and lost money or property, including but not limited to lost wages due to the disabling of their payroll and timekeeping services, the loss of Plaintiffs' and the subclass's legally protected interest in the confidentiality and privacy of their personal information, nominal damages, and additional losses described above.

98.     Section 1798.150(b) specifically provides that "[n]o [prefiling] notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages." Accordingly, Plaintiffs and the California subclass by way of this complaint seek actual pecuniary damages suffered as a result of UKG's violations described herein.  Plaintiffs have issued and/or will issue a notice of these alleged violations pursuant to § 1798.150(b) and intend to amend this complaint to seek statutory damages and injunctive relief upon expiration of the 30-day cure period pursuant to § 1798(a)(1)(A)-(B), (a)(2), and (b).

**SEVENTH CAUSE OF ACTION**

**(Violation of the California Customer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*, By Plaintiffs and the California Subclass Against All Defendants)**

99.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

100.     Cal. Civ. Code § 1798.81.5 provides that "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected.  To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."

101.     Section 1798.81.5(b) further states that:  "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

102.     Cal. Civ. Code § 1798.84(b) provides that [a]ny customer injured by a violation of this title may institute a civil action to recover damages."  Section 1798.84(e) further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

103.     Plaintiffs and member the California subclass are "customers" within the meaning of Civ. Code § 1798.80(c) and 1798.84(b) because they are individuals who provided personal information to UKG, directly and/or indirectly through their employers, for the purpose of obtaining a service from UKG.

104.     The personal information of Plaintiffs and the California subclass at issue in this lawsuit constitutes "personal information" under § 1798.81.5(d)(1) in that the personal information UKG collects and which was impacted by the data breach includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique

- 31 -

1  identification number issued on a government document commonly used to verify the identity of

2  a specific individual; (iii) account number or credit or debit card number, in combination with any

3  required security code, access code, or password that would permit access to an individual's

4  financial account; (iv) medical information; (v) health insurance information; (vi) unique

5  biometric data generated from measurements or technical analysis of human body characteristics,

6  such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

7      105.    UKG knew or should have known that its computer systems and data security

8  practices were inadequate to safeguard the California subclass's personal information and that the

9  risk of a data breach or theft was highly likely.  UKG failed to implement and maintain

10 reasonable security procedures and practices appropriate to the nature of the information to

11 protect the personal information of Plaintiffs and the California subclass.  Specifically, UKG

12 failed to implement and maintain reasonable security procedures and practices appropriate to the

13 nature of the information, to protect the personal information of Plaintiffs and the California

14 subclass from unauthorized access, destruction, use, modification, or disclosure.  UKG further

15 subjected Plaintiffs' and the California subclass's nonencrypted and nonredacted personal

16 information to an unauthorized access and exfiltration, theft, or disclosure as a result of the

17 UKG's violation of the duty to implement and maintain reasonable security procedures and

18 practices appropriate to the nature of the information, as described herein.

19     106.    As a direct and proximate result of UKG's violation of its duty, the unauthorized

20 access, destruction, use, modification, or disclosure of the personal information of Plaintiffs and

21 the California subclass included hackers' access to, removal, deletion, destruction, use,

22 modification, disabling, disclosure and/or conversion of the personal information of Plaintiffs and

23 the California subclass by the ransomware attackers and/or additional unauthorized third parties

24 to whom those cybercriminals sold and/or otherwise transmitted the information.

25     107.    As a direct and proximate result of UKG's acts or omissions, Plaintiffs and the

26 California subclass were injured and lost money or property, including but not limited to lost

27 wages due to the disabling of their payroll and timekeeping services, the loss of Plaintiffs' and the

28 subclass's legally protected interest in the confidentiality and privacy of their personal

information, nominal damages, and additional losses described above.  Plaintiffs seek compensatory damages as well as injunctive relief pursuant to Cal. Civ. Code § 1798.84(b).

## EIGHTH CAUSE OF ACTION

**(Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.* By Plaintiffs and the California Subclass Against All Defendants)**

108.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

109.    UKG is a "person" defined by Cal. Bus. & Prof. Code § 17201.

110.    UKG violated Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

111.    UKG's "unfair" acts and practices include:

a.    UKG failed to implement and maintain reasonable security measures to protect Plaintiffs and California sublcass members' personal Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the UKG data breach.  UKG failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents and known coding vulnerabilities in the industry, for example the Log4Shell is a software vulnerability in Apache Log4j 2, a popular Java library for logging error messages in applications.  UKG failed to patch these and other problems, which made it trivial for a hacker to penetrate UKG's systems. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiffs and the California subclass, whose personal Information has been compromised.

b.    UKG's failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act (15 U.S.C. § 45), California's Customer Records Act (Cal. Civ. Code § 1798.80 *et seq.*), and

- 33 -

California's Consumer Privacy Act (Cal. Civ. Code § 1798.150).

    c.   UKG's failure to implement and maintain reasonable security measures also led to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of UKG's inadequate security, consumers could not have reasonably avoided the harms that UKG caused.

    d.   Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

112.   UKG has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq.*, the FTC Act, 15 U.S.C. § 45, and California common law.

113.   UKG's unlawful, unfair, and deceptive acts and practices include:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and California subclass members' personal information, which was a direct and proximate cause of the UKG data breach

    b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the UKG data breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and California subclass members' personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, which was a direct and proximate cause of the UKG data breach.

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and California subclass members' personal information, including by

implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150.

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and California subclass members' personal information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150.

114.    UKG's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of UKG's data security and ability to protect the confidentiality of consumers' personal information and ongoing provision of timekeeping and payroll services.

115.    As a direct and proximate result of UKG's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and California subclass members were injured and lost money or property, including the lost wages directly resulting from the disabling of the timekeeping and payroll systems of the employers of Plaintiffs and subclass members, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, as well as the costs passed through from UKG to its customers and their employees for their timekeeping and payroll services, monetary damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Personal Information, and well as the time and

expense of finding alternative methods of timekeeping and payroll services.

116.    UKG acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs and California subclass members' rights. Past data breaches put it on notice that its security and privacy protections were inadequate.

117.    Plaintiffs and California subclass members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from UKG's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the nationwide class, and the California subclass, pray for the following relief:

1. An order certifying the nationwide class and California subclass as defined above pursuant to Fed. R. Civ. P. 23 and declaring that Plaintiffs are proper class representatives and appointing Plaintiffs' counsel as class counsel;

2. Permanent injunctive relief to prohibit UKG from continuing to engage in the unlawful acts, omissions, and practices described herein;

3. Compensatory, consequential, general, and nominal damages in an amount to be proven at trial, in excess of $5,000,000;

4. Disgorgement and restitution of all earnings, profits, compensation, and benefits received as a result of the unlawful acts, omissions, and practices described herein;

5. Punitive, exemplary, and/or trebled damages to the extent permitted by law;

6. A declaration of right and liabilities of the parties;

7. Costs of suit;

8. Reasonable attorneys' fees, including pursuant to Cal. Civ. Pro. Code § 1021.5;

9. Pre- and post-judgment interest at the maximum legal rate;

10. Distribution of any monies recovered on behalf of members of the Class or the general

1    public via fluid recovery or *cy pres* recovery where necessary and as applicable to

2    prevent Defendant from retaining the benefits of their wrongful conduct; and

3    11. Such other relief as the Court deems just and proper.

4

5    Dated: January 18, 2022                    ALEXANDER MORRISON + FEHR LLP

6                                               WUCETICH & KOROVILAS LLP

7

8                                               By:        /s/ Dimitrios V. Korovilas
                                                         DIMITRIOS V. KOROVILAS
9                                                       Attorneys for Plaintiffs
                                                 William Muller and Antonio Knezevich,
10                                                   individually and on behalf of
                                                      all others similarly situated

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2      Plaintiff, on behalf of himself and the putative class and subclass, hereby demands a trial

3 by jury on all issues of fact or law so triable.

4

5 Dated: January 18, 2022                      ALEXANDER MORRISON + FEHR LLP

6                                              WUCETICH & KOROVILAS LLP

7

8                                              By:        /s/ Dimitrios V. Korovilas

9                                                       DIMITRIOS V. KOROVILAS
                                                         Attorneys for Plaintiffs
                                              William Muller and Antonio Knezevich,
10                                                individually and on behalf of
                                                   all others similarly situated
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT