**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiffs and the Proposed Classes*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE UKG INC CYBERSECURITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All Actions. | Case No.: 3:22-cv-00346-SI<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date: June 2, 2023**<br>**Time: 10:00 a.m.**<br>**Dept.: Courtroom 1, 17th Floor, Via Zoom**<br>**Judge: Honorable Susan Illston** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on June 2, 2023 at 10:00 a.m., or as soon thereafter as the Court is available, in the courtroom of the Honorable Susan Illston, located at Courtroom 1 – 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs William Muller, Antonio Knezevich, Adam Bente and Cindy J. Villanueva (collectively "Plaintiffs"), will and hereby do move, pursuant to Fed. R. Civ. P. 23(e) for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement and Release (the "Settlement" or "Settlement Agreement") submitted herewith; (ii) provisionally certify the Class for the purpose of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Plaintiffs' counsel as Class Counsel; (iii) establish procedures for providing notice to members of the Class; (iv) approve the forms of notice to Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time and place for a final approval hearing.

This Motion is made on the grounds that terms of the proposed Settlement are fair and reasonable, and that preliminary approval of the Settlement is therefore proper because each requirement of Rule 23(e) has been met. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Order Granting Preliminary Approval of the Class Action Settlement (the "[Proposed] Preliminary Approval Order"). This Motion is based on the Declaration of Kas L. Gallucci of the Law Offices of Ronald A. Marron (the "Gallucci Decl.") and the exhibits attached thereto, including the Settlement Agreement; the Declaration of Jonathan M. Lebe of Lebe Law (the "Lebe Decl."); the Declaration of Michael S. Morrison of Alexander Morrison & Fehr LLP (the "Morrison Decl."); the Declaration of Dimitrios Korovilas of Wucetich Korovilas LLP (the "Korovilas Decl."); the Declaration of Jeanne C. Finegan of Kroll Settlement Administration, LLC (the "Finegan Decl.") and attached exhibits, the Declaration of Scott M. Fenwick of Kroll Settlement Administration, LLC (the "Fenwick Decl."); the Memorandum of Points and Authorities; the [Proposed] Preliminary Approval Order; the pleadings and papers on file in this Action; and such other evidence and argument as may subsequently be presented to the Court.

DATED: April 28, 2023

Respectfully submitted,

*/s/ Kas L. Gallucci*
Kas L. Gallucci

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**ALEXANDER MORRISON & FEHR LLP**
Michael S. Morrison
Erin Lim
1900 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310-394-0888
Fax: (310) 394-0811
mmorrison@amfllp.om
elim@amfllp.com

**WUCETICH KOROVILAS LLP**
Jason M. Wucetich
Dimitrios V. Korovilas
222 N. Pacific Coast Highway Suite 2000
El Segundo, CA 90245
Tel: (310) 335-2001
Fax: (310) 364-5201
jason@wukolaw.com
dimitri@wukolaw.com

**LEBE LAW**
Jonathan Michael Lebe
Zachary Taylor Gershman
Nicolas W. Tomas
777 S. Alameda Street, Second Floor
Los Angeles, CA 90021
Tel: (213)444-1973
jon@lebelaw.com
zacary@lebelaw.com
nicolas@lebelaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Local Rule 7-4(a)(3) of the Civil Local Rules, Plaintiffs set forth the following Statement of Issues to be Decided:

1. Whether the Court should certify, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), the **Nationwide Class** consisting of "all natural U.S. persons who are current or former employees or contractors, including their dependents, of UKG customers, whose data was stored in the KPC at the time of the December 2021 KPC Cyberattack and who were impacted by the interruption of KPC applications resulting from the December 2021 KPC Cyberattack;" a **California Subclass** consisting of "all members of the Nationwide Class who are also California residents at the time of the December 2021 KPC Cyberattack;" and an **Exfiltration Subclass** consisting of "all members of the Nationwide Class who were sent notice that their personal data was exfiltrated during the December 2021 KPC Cyberattack and were offered credit monitoring services for themselves or on behalf of their dependents;" and appoint William Muller, Antonio Knezevich, Adam Bente, and Cindy Villanueva as representatives for the Settlement Class and appoint Michael S. Morrison and Erin Lim of Alexander Morrison & Fehr LLP;  Dimitrios Korovilas and Jason Wucetich of Wucetich Korovilas LLP; Ronald A. Marron, Alexis M. Wood, and Kas L. Gallucci of Law Offices of Ronald A. Marron; and Jonathan M. Lebe and Zachary T. Gershman of Lebe Law, APLC as Class Counsel for the purpose of the Settlement?

2. Whether the terms of the Settlement Agreement represent a fair and reasonable compromise of the putative Class's claims and warrants preliminary approval and notice to the Class?

3. Whether the Notice program, as set forth in the Settlement Agreement, represents the best practicable notice to apprise the Class Members of the pendency of the class action and to give each Class Member a chance to be heard, object to, or opt out of the proposed Settlement?

# TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

IV.  THE TERMS OF THE PROPOSED SETTLEMENT ....................................... 3

    A.  Class Definition .................................................................................. 3

    B.  Monetary Relief For Class Members ..................................................... 5

    C.  Prospective Relief Agreed to by Defendant ............................................ 7

    D.  Release .............................................................................................. 7

    F.  Attorneys' Fees and Expenses .............................................................. 8

    G.  Notice and Administrative Expenses ..................................................... 9

    H.  Opt Out and Objection Procedures ..................................................... 10

V.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL ......................... 10

    A.  The *Hanlon* Factors .......................................................................... 11

        1. Strength of Plaintiffs' Case ............................................................ 11

        2. Risk of Continuing Litigation ........................................................ 12

        3. Risk of Maintaining Class Action Status ......................................... 14

        4. The Amount Offered In Settlement ................................................. 14

        5. The Extent of Discovery ................................................................ 16

        6. Experience and View of Counsel ..................................................... 16

    B.  The Rule 23(e)(2) Factors ................................................................... 17

        1. The Class Representative and Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)) ................................................................... 17

        2. The Settlement Was Negotiated At Arm's Length ............................ 17

-i-

3. The Settlement Provides Adequate Relief To The Class ........................................... 18

4. The Settlement Treats All Class Members Equally Within Their Respective Class and Subclass and Aims to Make all Settlement Class Members Whole ............................ 20

VI.   CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE .................. 21

A.   The Class Satisfies Rule 23(a) .................................................................... 21

1.   Numerosity ..................................................................................... 21

2.   Commonality and Typicality........................................................... 22

3.   Adequacy........................................................................................ 23

B.   The Class Satisfies Rule 23(b)(3).................................................................. 24

VIII.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.................................... 24

X.   CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Farmers Ins. Exch.*,
No. 3:14-cv-00574-WHO, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ............................ 20

*Blandino v. MCM Constr., Inc.*,
No. C 12-1729 WHO, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014).................................. 19

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ................................................................. 16, 17

*Briseno v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) .............................................................................. 11

*Cellphone Termination Fee Cases*,
186 Cal. App. 4th 1380 (2010), as modified (July 27, 2010)..........................................  7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F. 3d 566 (9th Cir. 2004)................................................................................ 11

*Clark v. Am. Residential Servs. LLC*,
175 Cal. App. 4th 785 (Cal. App. 2009) ................................................................. 8

*Dalchau v. Fastaff, LLC*,
No. 17-cv-01584-WHO, 2018 WL 1709925 (N.D. Cal. Apr. 9, 2018) ................................ 22

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................. 12, 20

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ........................................................................................... 22

*Giroux v. Essex Property Trust, Inc.*,
No. 16-CV-01722-HSG, 2019 WL 1207301 (N.D. Cal. March 14, 2019)........................... 16

*Greko v. Diesel U.S.A., Inc.*,
No. 10-cv-02576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013).................................. 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)......................................................................... 10, 24

*Hashemi v. Bosley, Inc.*,
   No. CV 21-946 PSG (RAOx), 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022) .................... 16

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 20

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ..................................................................... 15

*In re Apple Computer Sec. Litig.*,
   No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................... 13

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ............................ 19

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .......................................................................... 16

*In re Netflix Privacy Litig.*,
   No. 5:11-cv-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .............................. 14

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 16

*In re Premera Blue Cross Customer Data Security Breach Litigation*,
   No. 3:15-md-2633-SI, 2019 WL 3410382 (D. Ore. July 29, 2019) ...................................... 16

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   MDL No. 14–2522 (PAM), 2017 WL 2178306 (D. Minn. Nov. 17, 2015) .......................... 15

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,
   No. 14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ............................. 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020 ................................ 16

*In re: Equifax, Inc. Customer Data Sec. Breach Litig.,*
   No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ................................ 15

*Jones v. GN Netcom, Inc. ("In Re Bluetooth")*,
  654 F.3d 935 (9th. Cir. 2011) .................................................................................................. 11

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) .................................................................................... 14

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) ............................................................................................ 21

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) .............. 12, 13, 19, 20

*Linney v. Cellular Alaska P'ship*,
  1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) .............. 19

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................................................. 14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................ 12

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................................... 11

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ................................................................................................................. 24

*Pena v. Taylor Farms Pac., Inc.*,
  No. 2:13-cv-01282-KJM-AC, 2021 WL 916257 (E.D. Cal. Mar. 10, 2021) .......................... 11

*Perdue v. Hy-Vee, Inc.*,
  550 F.Supp.3d 572 (C.D. Ill 2021) .......................................................................................... 16

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020) ................................................................................................. 23

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ............................................................................................ 22

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................................ 12, 14, 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)...............................................................................23

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ........................................................................8

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. Mar. 9, 2010)..............................................................20

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)...............................................................................19

*Wellens v. Sankyo*,
   No. C 13-00581 Who (DMR), 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) .......................20

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001)...............................................................................24

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004).............12

*Newberg*, § 11.27 (4th ed. 2002)....................................................................................21

*Newberg,* § 11.28 .........................................................................................................23

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................................21

Fed. R. Civ. P. 23(a)(1) ................................................................................................21

Fed. R. Civ. P. 23(a)(2) ................................................................................................22

Fed. R. Civ. P. 23(a)(3) ................................................................................................22

Fed. R. Civ. P. 23(a)(4) ................................................................................................23

Fed. R. Civ. P. 23(b)(3) ..........................................................................................21, 24

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................................25

Fed. R. Civ. P. 23(e)(2) ...........................................................................................10, 11

Fed. R. Civ. P. 23(e)(2)(D) ...........................................................................................20

## I. INTRODUCTION

Plaintiffs William Muller, Antonio Knezevich, Adam Bente, and Cindy Villanueva (collectively "Plaintiffs"), by and through proposed Class Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.  Plaintiffs allege that Defendant UKG Inc. ("Defendant" or "UKG") maintained inadequate security measures which resulted in a ransomware attack to its Kronos Private Cloud ("KPC"). Plaintiffs further allege that the resulting disruption to the workforce management applications hosted in the KPC caused damages to employees and contractors of UKG's customers. For two of its KPC customers, UKG confirmed the cyberattack caused the exfiltration of personal data.[2] Plaintiffs, who at the time were employees of UKG's various customers, were impacted by the event. Plaintiffs assert nationwide claims for negligence, negligence per se, unjust enrichment, declaratory judgement, breach of contract, and common law invasion of privacy.  Plaintiffs also bring claims on behalf of a California subclass for violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, the California Customer Records Act, Cal. Civ. Code § 1798.80 *et seq*., violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., and invasion of privacy based on the California Constitution, Art. 1, § 1.

With the assistance of a private mediator, and many months of hard-fought negotiations even after a settlement in principle was reached, the Parties reached a class settlement agreement that, if approved, will deliver immediate and substantial monetary relief to putative Class Members, and will provide enhanced security hardening measures.  The Settlement Agreement and Release (the "Settlement") is submitted as Exhibit 1 to the Gallucci Declaration. Under the Settlement's terms, UKG will establish a non-reversionary cash Settlement Fund in the amount of $5,500,000, which will be used to pay all approved claims by Settlement Class Members, Settlement Administration Expenses, Court-approved Service Awards to Plaintiffs, and a Fee Award and Litigation Costs to

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement. *See* Gallucci Decl., Exhibit 1.

[2] Since filing the Complaint, discovery confirmed that of the approximate 2,000 impacted KPC customers, only two entities suffered any exfiltration of personal data, which aligns with the letters transmitted on UKG's behalf to the affected individuals. Gallucci Decl. ¶ 13.

proposed Class Counsel to the extent awarded by the Court. Further, should the number of submitted claims exhaust the initial fund, UKG shall supplement it with up to an additional $500,000 to pay the claims for a total of $6,000,000. UKG has also committed approximately $1,500,000 to security hardening measures.

Defendant does not oppose this motion and the Court should have no hesitation finding that the Settlement is fair, reasonable, and warrants preliminary approval. Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement; (2) conditionally certify the Settlement Class under Fed. R. Civ. P. 23(b)(3); (3) appoint Plaintiffs' counsel as Class Counsel; (4) appoint William Muller, Antonio Knezevich, Adam Bente, and Cindy Villanueva as the Class Representatives for the Settlement Class; (5) approve the Notice Plan described in the Settlement and direct its distribution; and (6) schedule a hearing for final approval.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

UKG is a leading provider of human resources, payroll, and workforce management solutions to companies around the globe. In connection with those services, customers use UKG products to collect, store, and process personnel information and data for their employees. *See* Gallucci Decl. ¶ 14. On June 21, 2022, Plaintiffs Muller, Knezvich, Villanueva and Bente filed a Consolidated Class Action Complaint alleging that due to its lack of adequate cybersecurity measures, UKG suffered a ransomware attack on or around December 11, 2021 on its KPC environment. Dkt. No. 33. For two of UKG's customers, the ransomware attack resulted in the exfiltration of personal data of employees and dependents of those employees. *See* Gallucci Decl. ¶ 13. Further, all KPC customers were unable to access the KPC applications for a period of time after the attack, which Plaintiffs allege resulted in damages to employees of UKG's customers.

On August 5, 2022, UKG filed a motion to dismiss the Consolidated Complaint arguing that all of Plaintiffs' claims must fail for several reasons. Among those reasons, UKG argued that as a third-party workforce management technology provider, it does not have a legal duty to ensure the timely or accurate payment of Plaintiffs' wages. UKG also argued that Plaintiffs' alleged injuries relating to their personal information (e.g., increased risk of future harm, diminished value, worry and lost time) are not cognizable and are otherwise barred by the economic loss rule. Dkt. No. 39.

From the outset, the Parties engaged in direct communication regarding early resolution as required by Fed. R. Civ. P. 26. Plaintiffs early on served formal discovery which was narrowed to informal discovery for the purpose of mediation. The requests sought information relating to the size of the putative class, the nature of the underlying incident and UKG's response. *See* Gallucci Decl., ¶ 17. This early discovery as well as various discussions with counsel for Defendant led to a mediation session before Ben Picker, Esq. of Stradley Ronon Stevens & Young LLP on September 9, 2022, via Zoom. *Id.* ¶ 18. Although the mediation was unsuccessful, the Parties continued negotiations with the mediator on an almost daily basis. *Id*. ¶ 19. The Parties ultimately reached an agreement in principle and for the next six months, negotiated a class wide Settlement Agreement and supporting documents (class notice, claim forms, notice/social media plan). *Id*. ¶ 20. The Parties engaged in good faith negotiations, which at all times were at arms' length and culminated in an agreement to settle the case. *Id*. ¶ 21. The Settlement also consists of formal, confirmatory discovery that supports the fairness and adequacy of the Settlement, and which was provided to and analyzed by Plaintiffs' counsel. *Id*. ¶ 13, 22, 42, 48; Korovilas Decl. ¶¶ 2-5.

## IV.     THE TERMS OF THE PROPOSED SETTLEMENT

The key terms of the Settlement are briefly summarized as follows:

### A.     Class Definition

The proposed Settlement consists of the following Classes:

**Nationwide Class**: All natural U.S. persons who are current or former employees or contractors, including their dependents, of UKG customers, whose data was stored in the KPC at the time of the December 2021 KPC Cyberattack and who were impacted by the interruption of KPC applications resulting from the December 2021 KPC Cyberattack.

**California Subclass**: All members of the Nationwide Class who are also California residents at the time of the December 2021 KPC Cyberattack.

**Exfiltration Subclass**: All members of the Nationwide Class who were sent notice that their personal data was exfiltrated during the December 2021 KPC Cyberattack and were offered credit monitoring services for themselves or on behalf of their dependents.[3]

---

[3] Excluded from the Settlement Class are UKG's officers, directors, and employees; any entity in which UKG has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of UKG. Excluded also from the Settlement Class are members of the judiciary to whom this case is assigned, their families and members of their staff. Also excluded from the

Settlement ¶ 51.  The definitions modify the classes in the Consolidated Complaint (Dkt. No. 33 at ¶ 65) such that the new Exfiltration Subclass is narrowed from the original Nationwide Class to include only those individuals whose personal data was exfiltrated as a result of the KPC Cyberattack and the new Nationwide class includes those impacted or injured by the cyberattack and the disruption of KPC applications. The definitions modify the classes in the Consolidated Complaint (Dkt. No. 22 at ¶ 65) in two ways: (1) there is now an Exfiltration Subclass of individuals whose personal data was exfiltrated as a result of the KPC Cyberattack; and (2) the new Nationwide class definition includes individuals impacted or injured by the cyberattack and disruption of the KPC applications. The original Nationwide Class combined these classes. The Settlement still provides for a California Subclass consistent with the Consolidated Complaint.

There are eleven (11) other cases known by the Parties that will be affected by this Settlement.[4] Plaintiffs' counsel has actively engaged with plaintiffs' counsel in the other cases, and all participated in mediation.  *See* Gallucci Decl. ¶ 24.  In Massachusetts, there are nine (9) related class actions which allege class claims against UKG based on the same alleged harm to their personal information and impacts of the disruption of KPC applications but also seek employment claims for wages against specific UKG customers and UKG ("MA cases").  *Id.* ¶ 25. Many or all of the claims in those class actions will be subsumed by this Settlement, as they relate to UKG.

As to the wage claims against UKG in the MA cases, those theories of liability are, at best, novel because UKG was not an employer of the impacted individuals or otherwise responsible for

Settlement Class are non-natural persons. Settlement ¶ 52.  Last, Settlement Class Members who properly execute a timely request for exclusion will be excluded. Settlement ¶ 69.

[4] (1) *Pallotta v. Univ. of Mass. Mem'l Med. Ctr., et al.*, No. 4:22-cv-10361 (D. Mass.) (filed on March 9, 2022);
(2) *Sampson v. UKG, Inc.*, No. 1:22-cv-10947 (D. Mass.) (filed June 16, 2022);
(3) *Arpie v. UKG, Inc., et al*, No. 3:22-cv-30096 (D. Mass.) (filed July 20, 2022);
(4) *Cornacchia v. UKG, Inc., et al.*, No. 4:22-cv-40081 (D. Mass.) (filed July 20, 2022);
(5) *Fuller v. UKG, Inc. et al.*, No. 4:22-cv-40082-ADB (D. Mass) (filed July 20, 2022);
(6) *Mysliewwic v. UKG, Inc., et al.*, No. 4:22-cv-40083-ADB (D. Mass.) (filed July 20, 2022);
(7) *Taylor v. UKG, Inc., et al*, No. 1:22-cv-11168-ADB (D. Mass.) (filed July 20, 2022);
(8) *Ward v. UKG, Inc., et al.*, No. 4:22-cv-40084-ADB (D. Mass.) (filed July 20, 2022);
(9) *Lavin v. Univ. of Mass. Mem'l Med. Ctr., et al.*, No. 2285-cv-00056C (Mass. Super. Ct.);
(10) *Fraga v. UKG, Inc.*, Broward County Case No. CACE-22-008353; and
(11) *Ellis v. Cargill Meat Solutions & UKG*, No. 4:22-cv-00864-Y (N.D. Tex.) (filed Sept. 26, 2022).

paying their wages.[5] Nevertheless, the Settlement contains a carve-out that the release "do[es] not include any claims, demands, actions, and causes of action (whether statutory, contractual, or common law) for wages of any kind brought against UKG relating to the December 2021 KPC Cyberattack or resulting interruptions of KPC application." Settlement ¶ 60.  Accordingly, while there is substantial overlap between the operative facts that give rise to, and the claims asserted in, the MA cases, the express carve-out excludes claims asserted by the plaintiffs in the MA cases seeking wages against UKG arising out of the December 2021 KPC Cyberattack.

There is one lawsuit in Florida that was originally filed in federal court but was dismissed for lack of Article III standing. That lawsuit was subsequently refiled in state court. After refiling, the case has not otherwise been actively litigated. The Florida case would be substantially affected and subsumed by this Settlement. Plaintiffs' counsel here, as well as counsel for the Defendant, have discussed this Settlement with plaintiffs' counsel in the Florida action and counsel in Florida have elected not to join this settlement. *See* Gallucci Decl. ¶¶ 27-28.

### B.    Monetary Relief For Class Members

Defendant will establish a non-reversionary cash Settlement Fund of $5,500,000, which will be used to pay all Approved Claims by Class Members, Settlement Administration Expenses, Service Awards to the named Plaintiffs and the Fee Award to proposed Class Counsel, as well as Litigations Costs, to the extent awarded by the Court.   Settlement ¶ 46. Should the number of submitted claims exhausts the $5,500,000, after deduction of Settlement Administrator Expenses, Fee Award and Service Awards, and Litigation Costs, UKG will supplement the Settlement Fund with an additional payment of up to $500,000 to satisfy the claims for a total of $6,000,000.[6]  *Id.*

---

[5] Counsel represents that employees of UKG's customers in separate lawsuits (where UKG is not named) are seeking recovery of wages against UKG's customers directly based on the December 2021 KPC Cyberattack.

[6] Should that additional amount be insufficient to pay Approved Claims in full, all such payments to Settlement Class Members will be reduced pro rata.  To satisfy a pro rata reduction, the Parties intend to decrease the hourly rate of lost time provided under ordinary losses.  Further the Parties intend to first compensate in full Exfiltration Subclass Members.  To the extent the Net Settlement Fund is not exhausted, Settlement Class Members who submit Approved Claims will receive an equal share as an enhancement of their cash compensation up to the Net Settlement Fund on a per person basis.

The Settlement allows the **Nationwide Class** to seek up to $1,000 per person for compensation of ordinary losses in the following non-exhaustive categories: long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), bank fees (documented), credit monitoring (documented), and late fees (documented), and other documented non-wage monetary losses, all of which must be more likely than not caused by and fairly traceable to the December 2021 KPC Cyberattack and subsequent interruption of applications hosted in the KPC. Settlement ¶ 54(a). Nationwide Class Members may also seek up to four hours of lost personal time at $25/hour spent responding to the December 2021 KPS Cyberattack. Settlement ¶ 54(b).

In addition to compensation for ordinary losses and lost personal time, those Settlement Class Members who had personal data exfiltrated (the **Exfiltration Subclass**) may seek up to an additional $7,500 of compensation for actual, documented, and unreimbursed monetary loss associated with fraud or identify theft and an additional payment of $100. Settlement ¶¶ 53(b)(ii) & 55. Members of the **California Subclass** can also claim an additional $30 enhancement. Settlement ¶ 53(b)(ii).

Settlement Class Members wishing to receive a cash payment from the Net Settlement Fund must submit a valid Claim Form to the Settlement Administrator by the Claims Deadline. Settlement ¶ 56. The Settlement Administrator will be responsible for reviewing all claims to determine their validity. The Settlement Administrator will reject any claim that does not comply in any material respect with instructions on the Claim Form (Settlement ¶ 65) or that is submitted after the Claims Deadline (Settlement ¶ 21). Further, Settlement Class Members will be given a reasonable time to cure any deficiencies. Settlement ¶ 65. Parties have the right to audit the claims process. However, the Settlement Administrator shall be the final arbiter of a claim's validity. *Id.* All cash payments will be issued to Settlement Class Members through an electronic or other payment option selected on the Claim Form and will have ninety (90) days to deposit, cash or negotiate the check. Settlement ¶¶ 56 & 66. Any residual funds not paid out after the expiration of the date of issuance of the

---

To reduce or eliminate any residual amount, any remainder amounting to less than one cent per Claimant shall be allocated in the order that claims were received until the Settlement Fund is exhausted. Settlement ¶ 53(c).

distribution shall be paid to the Privacy Rights Clearinghouse, a 501(c)(3) nonprofit organization. Settlement ¶¶ 26 & 57. Any claims deemed fraudulent by the claims administrator shall be deemed residual funds and distributed as directed above.

### C.     Prospective Relief Agreed to by Defendant

UKG also committed to measures to harden the security of the KPC environment impacted by the December 2021 KPC Cyberattack. Settlement ¶ 58. UKG has represented that it has taken and will continue to take security hardening measures which include, for various periods of time depending on the measure: expanding the scanning and monitoring program using insights from its investigation; supplementing UKG's Security Operations Center monitoring with additional third-party managed service monitoring; deploying additional malware scanning tools across all products and UKG's corporate IT environment; and expanding cold storage backups. *Id.* The estimated cost of such measures is in excess of $1,500,000.00. Settlement ¶¶ 58(a), 46, 48.

### D.     Release

In exchange for the relief described above, Defendant as the "Released Parties" (Settlement ¶ 40) will receive a full release of all claims other than wage claims arising from the December 2021 KPC Cyberattack which were or could have been alleged based on the facts in the operative Complaint. Settlement ¶ 60. The full language of the Release is in paragraph 60 of the Settlement. In line with the carve-out in the release, under this Settlement, Class Members cannot make a claim for lost wages. The claims in the Complaint are the same claims released here.

### E.     Service Awards

Subject to Court approval, in recognition for the efforts of Plaintiffs William Muller, Antonio Knezevich, Adam Bente, and Cindy Villanueva, on behalf of the Settlement Class, Plaintiffs will seek incentive awards of up to $7,500 each from the Settlement Fund. Service payments "compensate class representatives for work done on behalf of the class, [and] to make up for the financial or reputational risk undertaken in bringing the action." *Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1393–94, 113 Cal. Rptr. 3d 510, 521 (2010), as modified (July 27, 2010). Plaintiffs "should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class." *Clark v. Am. Residential Servs. LLC*, 175 Cal. App. 4th 785, 806

(Cal. App. 2009). Factors to be considered in granting a service award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort expended by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Here, Plaintiffs have spent time on this action, have assisted with the investigation of this action, the drafting of their individual complaints and the Consolidated Complaint. Gallucci Decl. ¶ 29-30; Korovilas Decl., ¶ 17; Lebe Decl. ¶¶ 16-18. Plaintiffs have assumed the risk associated with being a class representative and have been in contact with counsel frequently and have stayed informed of the status of the action, including Settlement. *Id.* The Settlement is not expressly contingent upon the amount of any Service Award. Settlement ¶ 75. The service payments sought here are no more than the amounts available pursuant to the Settlement for Class Members who experienced extraordinary losses.

### F. Attorneys' Fees and Expenses

UKG has agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees ("Fee Award") and for Litigation Costs, in an amount to be approved by the Court. Settlement ¶¶ 31, 32 & 74. Plaintiffs will petition the Court for a Fee Award not to exceed one-third of the Settlement Fund (between $1,833,333.33 and $2,000,000) and for reimbursement of Litigation Costs (estimated to be approximately $50,000). *Id.;* Gallucci Decl. ¶ 32. There is no clear sailing agreement. Settlement ¶ 9.1. Further, approval of the Settlement is expressly not contingent upon approval of Plaintiffs' request for fees and expenses. Settlement ¶ 74. The attorney fee request is based upon an approximate lodestar calculation of $1,169,996.50 including total attorney hours of approximately 1561.4 through the filing of this preliminary approval motion and eliminating any hours from preliminary approval though the final distribution of funds. *See* Gallucci Decl. ¶¶ 32-33; Lebe Decl., ¶¶ 19-24; Morrison Decl., ¶¶ 7-14; and Korovilas Decl., ¶¶ 12-16. This lodestar amounts to a current approximate multiplier of 1.6. *Id.;* Gallucci Decl. ¶ 34. Counsel will also seek reimbursement for costs not to exceed $50,000. Settlement ¶ 74; *see also* Gallucci Decl. ¶ 35; Lebe Decl. ¶ 19 & Ex. A; Morrison Decl. ¶ 15 & Ex. 2; and Korovilas Decl. ¶ 14.

### G.        Notice and Administrative Expenses

The Settlement Fund will be used to pay the cost of Notice set forth in the Settlement and any other notice as required by the Court, as well as all other costs of settlement administration. Settlement ¶¶ 34, 43, 46. The Parties have selected Kroll Settlement Administration LLC ("Kroll") to act as the Settlement Administrator. The Parties selected the Settlement Administrator after Plaintiffs solicited bids from three (3) settlement administrators and Kroll provided the most reasonable bid following negotiations which estimated that its notice program would provide the best notice that is practicable under the circumstances. *See* Gallucci Decl. ¶ 36. Class Counsel engaged Kroll twice in the past two years[7] and was pleased with the administration. *Id.* ¶ 37.  Kroll has considerable experience as an appointed settlement administrator and provides a declaration detailing its extensive data security measures it has established to securely handle data and confirming its maintenance of comprehensive insurance coverage, including Errors & Omissions coverage. *See* Fenwick Decl. ¶¶ 1-3, 17-24 & Finegan Decl. ¶¶ 1-12, Ex. A.

As the specific identities of all Nationwide Class Members are unknown, the Notice plan includes a comprehensive Social Media Campaign[8], Settlement Website which will contain the agreed Long Form Notice and Claims Form (attached as Exhibits 2 & 3 to the Gallucci Decl.), and a Settlement Toll Free Number to best reach Settlement Class Members.  Settlement ¶ 63.  *See also* Fenwick Decl. ¶¶ 4-11.  Additionally, to aid in the distribution, UKG will use its best efforts to notify KPC customers affected by the December 2021 Cyberattack by providing a link to the Notice and the Settlement Website, so the KPC customers may decide whether/how to disseminate the Notice to their respective employees.  *Id.*  Further, UKG will post on its own website, a link to the Notice and Settlement Website, at UKG.com/KronosPrivateCloudSettlement. *Id.* Members of the Exfiltration Subclass have already been given direct mail notice of the exfiltration of their personal data, thus postcard notice shall be sent to all reasonably identifiable Exfiltration Subclass members.

---

[7] The Marron Firm engaged Kroll in 2021 in the matter *Young et al v Neurobrands, LLC*, Case No. 18-cv-05907 (N.D. Cal) and in 2021 in the matter *Clark v. S.C. Johnson & Son, Inc.*, Case No. RG20067897 (Alameda Superior Court).  *See* Gallucci Decl. ¶ 37.

[8] The social media plan is outlined in detail in the Finegan Declaration at ¶¶ 14-33 & Exs. B & C.

*Id.* The agreed Postcard Notice is attached as Exhibit 4 to the Gallucci Declaration. The cost of the notice implementation and administration is capped at $1,200,000. *See* Gallucci Decl. ¶ 38; *see* Fenwick Decl., ¶ 16.  Further, CAFA Notice will be distributed. Settlement ¶ 63(g).

### H.    Opt Out and Objection Procedures

A Settlement Class member who does not wish to participate in the Settlement may opt-out of the Settlement by sending a signed letter, identifying themselves by full name, stating he or she wants to be excluded from the Settlement in *In re UKG Inc. Cybersecurity Litigation,* Master Docket No. 3:22-cv-00346 (N.D. Cal.) to the Claims Administrator no later than seventy-five (75) days after the Notice Date. Settlement ¶¶ 37 & 69. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against UKG, subject to any defenses that UKG may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. Settlement ¶ 69. A Settlement Class member who wishes to file an objection to the Settlement likewise must do so no later than seventy-five (75) days after the Notice Date. Settlement ¶¶ 37 & 68. The objection procedure conforms to this Court's "Procedural Guidance for Class Actions" and is laid out in full in the Settlement. Settlement ¶ 68.

## V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When making this determination, the Ninth Circuit has instructed district courts to balance several factors: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" and (5) "the extent of discovery completed and the stage of the proceedings."[9] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also*

---

[9] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval and will be addressed at that time.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566 (9th Cir. 2004) (same); *Pena v. Taylor Farms Pac., Inc.*, No. 2:13-cv-01282-KJM-AC, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same).

In addition, courts should also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), which include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

This Court must also review the settlement under *Jones v. GN Netcom, Inc. ("In Re Bluetooth")*, 654 F.3d 935 (9th. Cir. 2011), which requires courts to scrutinize attorneys' fee agreements in class action settlements for "subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. *In Re Bluetooth* identified three signs of potential collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (internal citations omitted). Important here, there is no clear sailing agreement or reversion.

### A.    The *Hanlon* Factors

#### 1.    <u>Strength of Plaintiffs' Case</u>

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto.*

*Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories, and defenses on both sides before engaging in arms-length negotiations with Defendant's counsel. *See* Gallucci Decl. ¶¶ 8-22, 40-43, 47-49; Korovilas Decl. ¶¶ 2-6, 13. Although Plaintiffs and Class Counsel had confidence in their claims, they recognize that a favorable outcome was not assured and that they would face risks at class certification, motion to dismiss, summary judgment, and trial. *See id.* UKG vigorously denies Plaintiffs' allegations and asserts that neither Plaintiffs themselves nor the Classes suffered any harm or are entitled to damages. In addition, UKG would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly more than achieved here absent such risks. The Settlement abrogates these risks to Plaintiffs and the Class. *See Rodriguez*, 563 F.3d at 965-66 ("[O]ne factor 'that may bear on review of a settlement' is 'the advantages of the proposed settlement versus the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members[.]'") (citing Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004)). Thus, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.

### 2.   Risk of Continuing Litigation

Next, approval of the proposed settlement is appropriate given the risks associated with continued litigation. By reaching a favorable settlement now, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("*DIRECTV, Inc.*")) (internal quotation marks omitted). "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Id.* (citing *Rodriguez*, 563 F.3d at 966).

The Parties engaged in formal and informal discovery prior to mediation, and continued with formal discovery, including confirmatory discovery regarding all aspects of the cybersecurity event. The next steps in the litigation would have been for Plaintiffs to oppose UKG's Motion to Dismiss, engage in expert discovery, and litigate motions for summary judgment and class certification. These next steps would be costly and time-consuming for the Parties and the Court and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. UKG would continue to assert defenses on the merits, including challenging Plaintiffs' standing under California's consumer protection statutes and Plaintiffs' ability to show that UKG's conduct caused Plaintiffs any injury.  Indeed, UKG was successful in getting the Florida action dismissed at the pleading stage. *See* Gallucci Decl. ¶ 27.

UKG would also oppose class certification vigorously and prepare a competent defense at trial. Assuming that Plaintiffs were to survive a motion to dismiss and summary judgment, they would likely face the risk of establishing liability at trial as a result of conflicting expert testimony between their own expert witnesses and UKG's expert witnesses. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury. The experience of proposed Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain. Additionally, looking beyond trial, UKG could appeal the merits of any adverse decision. Even if Plaintiffs were to prevail at every stage of this litigation, there remains a substantial likelihood that Class Members would not be awarded significantly more than (or even as much as) is offered to them under this Settlement. *See, e.g.*, *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs awarding over $100 million in damages, entering judgment in favor of individual defendants, and ordering new trial for corporate defendant). In sum, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4. The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class. This result will be accomplished

-13-

years earlier than if the case proceeded to judgment through trial and/or appeals and provides certainty through monetary compensation and prospective relief. "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

### 3.  Risk of Maintaining Class Action Status

In addition to the risks of continuing the litigation, the Court has not yet certified the proposed Classes and such a determination could be reached only after exhaustive class certification briefing and expensive expert discovery. Moreover, even assuming that the Court were to grant a motion for class certification, the classes could still be decertified at any time. *See In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, proposed Class Counsel anticipates that, should the Court certify the classes, UKG may appeal the Court's decision through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing.

### 4.  The Amount Offered In Settlement

A Court's analysis of whether a settlement amount is reasonable is "an amalgam of delicate balancing, gross approximations, and rough justice." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. Indeed, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Here, the Settlement structure is designed to provide the most financial compensation for those persons in the Exfiltration Subclass and less funds to members of the Nationwide Class who only experienced ordinary losses. Settlement ¶¶ 53-55. All Nationwide Class Members may seek compensation for Ordinary Losses up to $1,000 for out-of-pocket expenses and lost time valued at $25/hour for four hours. Exfiltration Subclass Members however may *also* seek compensation for Extraordinary Losses associated with fraud or identity theft up to $7,500 _**and**_ an additional payment

of $100.  *Id.* California Subclass Members who attest to being a resident of California during the cyberattack also receive <u>*an additional*</u> payment of $30 as California is a state which provides some of the strongest consumer protection and privacy rights and affords specific statutory damage amounts for those claims.  *Id.*  While proposed Class Counsel is unable to estimate the payment each Settlement Class Member may receive as that amount is dependent on the financial harm each Class Member claims, Class Counsel has devised a structure to distribute funds to those most affected and ensure no funds revert to UKG. Settlement ¶¶ 53(c) & 57. Given the Exfiltration Class includes less than 20,000 people, proposed Class Counsel believe that all claims should be sufficiently funded. *See* Gallucci Decl., ¶ 46. Additionally, UKG has agreed to provide prospective relief through enhanced hardening measures estimated to be approximately $1,500,000, bringing the Total Economic Benefit from $7,000,000 to $7,500,000.[10]

Overall, this Settlement establishes a settlement fund of potentially up to $6 million to compensate potential Nationwide Class Members.[11] The benefits provided compare favorably with the benefits offered in class action settlements involving significantly larger classes, including settlements approved in the Northern District. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (granting final approval of $115 million settlement to class of roughly 79 million); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 14-MD-02583-TWT, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) (granting final approval of $28.4 settlement to consumer class of roughly 52 million); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14–2522 (PAM), 2017 WL 2178306, at *4 (D. Minn. Nov. 17, 2015) (granting final approval of $23.3 million settlement to consumer class of roughly 110 million); *see also In re: Equifax, Inc. Customer Data Sec. Breach Litig.,* No. 1:17-md-2800-TWT, 2020 WL 256132, at *45 (N.D. Ga. Mar. 17, 2020) (granting final approval of $380.5 million settlement to consumer class of roughly 147 million); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020

---

[10] Depending on whether the volume and individual amount of claims trigger some or all the axillary fund. Settlement ¶¶ 34 & 46.

[11] The exact number of Class Members is unknown, but based on discovery, Class Counsel estimates that the number of individuals potentially impacted by the December 2021 KPC Cyberattack could be lower than 7 million. *See* Gallucci Decl., ¶ 47.

WL 4212811 (N.D. Cal. July 22, 2020) (granting final approval $117.5 million settlement fund for a class action 194 million persons).

In terms of Class Members' individual recovery amounts, Class Members experiencing an extraordinary loss are eligible to receive up to a total of $8,600 in damages (ordinary loss of up to $1,000 and extraordinary loss of up to $7,500 and an additional $100 payment). By comparison, in *Giroux v. Essex Property Trust, Inc.*, No. 16-CV-01722-HSG, 2019 WL 1207301, *3 (N.D. Cal. March 14, 2019), the class members' recovery, not including the value of identity theft protection, was approximately $70. In *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOx), 2022 WL 18278431, *2 (C.D. Cal. Nov. 21, 2022), class members were eligible to receive up to $300 in ordinary expenses and up to $5,000 for extraordinary loss. With respect to *Perdue v. Hy-Vee, Inc.*, 550 F.Supp.3d 572, 574 (C.D. Ill 2021), class members could seek reimbursement of up to $225 for ordinary expenses and up to $5,000 for extraordinary expenses. In *In re Premera Blue Cross Customer Data Security Breach Litigation*, No. 3:15-md-2633-SI, 2019 WL 3410382 (D. Ore. July 29, 2019), class members were eligible to receive up to $10,000 for losses attributable to the data breach. Thus, the potential individual recovery amounts are commensurate with other settlements.

### 5.    The Extent of Discovery

Courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs, though counsel, have conducted extensive research into the legal theories, discovery, and investigation, including informal and then formal discovery. The Parties also held numerous discussions regarding Plaintiffs' allegations, discovery, and the prospects of settlement, as well as a fulsome mediation session with Mr. Picker. *See* Gallucci Decl. ¶¶ 13-22, 46-48.

### 6.    Experience and View of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.* [hereinafter *Betchel Corp.*], 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[a]ttorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in

-16-

the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs." *Betchel Corp.*, 485 F. Supp. at 622; *see also Rodriguez*, 563 F.3d at 967 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation, including data breaches and employment cases. *See* Gallucci Decl. Ex. 5, Korovilas Decl. ¶¶ 7-11; Morrison Decl. ¶¶ 2-6; Lebe Decl. ¶¶ 3-15.   Based on their experience, proposed Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

**B.     The Rule 23(e)(2) Factors**

**1.     <u>The Class Representative and Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))</u>**

As is discussed further below, Plaintiffs' interests here are aligned with other class members' interests because they claim they suffered the same injuries – they experienced monetary loss or lost time by the December 2021 KPC Cyberattack. Because Plaintiffs and the Class suffered these resulting alleged injuries, Plaintiffs have an interest in vigorously pursuing the claims of the class. Further, numerous courts in this district and others have found that Plaintiffs' attorneys had adequately met the obligations and responsibilities of Class Counsel. *See gen.* Gallucci Decl.; Korovilas Decl., ¶¶ 7-11, 17; Morrison Decl. ¶¶ 2-6; Lebe Decl., ¶¶ 3-18.

**2.     <u>The Settlement Was Negotiated At Arm's Length</u>**

In preliminarily evaluating the adequacy of a proposed settlement under Rule 23(e)(2), particular attention should be paid to the process of settlement negotiations.  When a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, there is a presumption that the settlement is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Garner*, 2010 WL 1687832, at *9. Here, counsel for both Plaintiffs and UKG are experienced in class action litigation, engaged in protracted settlement discussions, and reached this settlement with the assistance of an experienced neutral. Gallucci Decl. ¶¶ 40-43. In other words, the negotiations were conducted at arm's length, non-collusive, well-informed (in that they were conducted after an assessment of the strengths and

weaknesses of the claims on both sides), conducted between counsel on both sides with decades of class action experience, and utilized at the appropriate time the assistance of a well-respected mediator. Under such circumstances, the Court is entitled to rely upon counsel's opinions and assessments. *See Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021).

### 3.   <u>The Settlement Provides Adequate Relief To The Class</u>

Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv). These factors subsume several *Hanlon* factors including: "the risk, expense, complexity, and likely duration of further litigation" (*Hanlon* Factor 2); "the risk of maintaining class action status throughout the trial" (*Hanlon* Factor 3); and "the amount offered in settlement" (*Hanlon* Factor 4). As noted above, the Settlement has met each of the *Hanlon* factors. *Supra* §§ V.A(1)-(5) and no such Rule 23(e)(3) agreement exists in this case.

As to "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605 JVS (SSx), 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes).  Here, under the terms of the Settlement, Settlement Class Members can submit a Claim Form and, if approved, receive payment from the Net Settlement Fund. Settlement ¶¶ 34, 53-56. The claims process "requires logging on to the Settlement Website and submitting a Claim there, or a Settlement Class Member may print the Claim form from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer." *Alvarez*, 2020 WL 7314793, at *6. The Court should find that "this process is not unduly demanding." *Id.*

Next, as to "the terms of any proposed award of attorney's fees," Class Counsel will apply for a Fee Award not to exceed between $1,833,333.33 and $2,000,000, which constitutes one-third of the non-reversionary cash value and represents 26.6% of the Total Economic Benefit to the

Settlement Class. *See* Gallucci Decl. ¶ 32.  The Ninth Circuit has identified five relevant factors in determining whether requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund; (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by Plaintiffs and the Class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Here, each factor is easily satisfied.

First, with respect to the results achieved, Class Counsel's efforts have secured settlement consisting of a mix of monetary and prospective relief, with a total non-reversionary cash value amount between $5,500,000 and $6,000,000, which does not include the additional and substantial value to the class of the security hardening measures which were critical to the settlement and which is valued at approximately $1,500,000, bringing the Total Economic Value of the Settlement from $7,000,000 to $7,500,000. As discussed in detail above, this is an excellent result. *See supra* § V.A(4). Second, Plaintiffs have established that there are significant risks in entering a protracted litigation. *See supra* §§ V.A(2)-(3). Thus, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4. Third, as noted above, *see supra* § IV.C, Class Counsel's time and efforts have generated benefits beyond the Class settlement fund.

Finally, Plaintiffs' counsel's requested fee is consistent with market rates as reflected by awards made in similar cases. Indeed, courts in this Circuit routinely approve fee requests for up to one-third of a common fund. *See, e.g.*, *Blandino v. MCM Constr., Inc.*, No. C 12-1729 WHO, 2014 WL 11369763, at *3 (N.D. Cal. Mar. 6, 2014) (awarding 33% of settlement fund in attorneys' fees); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (awarding 33% in fees); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 457, 460 (affirming 33.5% fee award); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (affirming 33.3% fee award) ("The $2,000,000 requested by class counsel amounts to one-third of this common fund. … Courts in this district have consistently approved attorneys' fees which amount to approximately one-third of the relief procured

for the class.") (citations omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (affirming 33% fee award); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. Mar. 9, 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding fee of 32.8%); *Garner v. State Farm Mutual Automobile Ins. Co.*, No. CV 08 1365 CW, 2010 WL 168726, at *1 (N.D. Cal. Apr. 22, 2010) ("A fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund cases."); *Vizcaino*, 290 F.3d at 1050 (affirming 28% fee award); *Larsen*, 2014 WL 3404531, at *9 ("[Counsel's] request for attorneys' fees in the amount of 28% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases.") (citations omitted); *Wellens v. Sankyo*, No. C 13-00581 WHO (DMR), 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding 36% of $8,200,000 settlement fund in fees).[12] The requested fees are also fair given the significant time Class Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all absent a successful resolution. Thus, because of the contingent nature and the financial burden carried, Plaintiffs' Counsel's requested fee award of one-third of the Settlement is reasonable and appropriate in this case. *See Vizcaino*, 290 F.3d at 1048-50.

### 4. The Settlement Treats All Class Members Equally Within Their Respective Class and Subclass and Aims to Make all Settlement Class Members Whole

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). The Settlement here provides a non-reversionary cash fund of at least $5,500,000 and benefits to all Class Members who submit a Claim Form and have damages attributable to the December 2021 KPC attack. While members of the Exfiltration Subclass are eligible to receive additional damages for extraordinary loss, this makes sense as only Class Members who had their personal data exfiltrated

---

[12] *See also Alvarez v. Farmers Ins. Exch.*, No. 3:14-cv-00574-WHO, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million.") (citations omitted); *accord Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *11 (N.D. Cal. Apr. 26, 2013).

are likely to suffer an extraordinary loss traceable to the cyberattack. In addition, as stated above, the Class Representative enhancements are in line with the settlement shares available to Class Members who suffer extraordinary loss. Thus, this factor weighs in favor of granting approval.

## VI.   CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

Plaintiffs respectfully request that the Court conditionally certify the Settlement Class for purposes of effectuating the settlement, appoint Plaintiffs' counsel as Class Counsel, and appoint Plaintiffs as the Class Representatives *See Newberg*, § 11.27 (4th ed. 2002) ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."). Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and, (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Additionally, Rule 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As discussed below, all applicable Rule 23 requirements are met, and UKG consents to provisional certification for settlement purposes.

### A.      The Class Satisfies Rule 23(a)

#### 1.      Numerosity

Rule 23(a)(1) is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed at a level of 40 members. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) ("Courts generally find numerosity satisfied if the class includes forty or more members.") (citations omitted). Here, as to the Nationwide Class, Class Members include impacted employees or contractors, including their dependents, of approximately 2,000 KPC customers.  Gallucci Decl. ¶¶ 13, 47.  In addition, based

-21-

on confirmatory discovery, the number of individuals in the Exfiltration Subclass Members and in the California Subclass exceed 40.  *Id.* ¶ 46. Numerosity is therefore satisfied.

### 2.   <u>Commonality and Typicality</u>

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts construe the commonality requirement liberally. Indeed, "[f]or purposes of Rule 23(a)(2), 'even a single common question will do.'" *Dalchau v. Fastaff, LLC*, No. 17-cv-01584-WHO, 2018 WL 1709925, at *7 (N.D. Cal. Apr. 9, 2018) (quoting *Dukes*, 564 U.S. at 359).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation. Plaintiffs allege that the same December 2021 KPC Cyberattack caused injury to all persons who can qualify as Settlement Class members.  *See also Avanquest*, 2015 WL 4396137, at *2 ("[T]here are questions of law and fact common to all class members, because all bought the same software from Avanquest and suffered the same general type of injury."). As a result, the predominant common question is whether UKG had appropriate security measures in place when the data breach occurred. Additional common questions include: whether Plaintiffs and Settlement Class members were injured and suffered damages as a result of the KPC Cyberattack, and whether Plaintiffs and Settlement Class members are entitled to monetary damages or other relief? Courts considering similar claims resulting from uniform conduct routinely certify classes based on evidence of a common policy. *See, e.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("Courts routinely find commonality in false advertising cases that are materially indistinguishable from the matter at bar," involving consumer products). Further, Plaintiffs' claims are brought under legal theories common to the Class as a whole and that alone is enough to establish commonality.

Rule 23(a)(3) requires that the claims of the representative Plaintiffs be "typical of the claims… of the class." Fed. R. Civ. P. 23(a)(3). To satisfy typicality, the representative plaintiff simply must demonstrate that the members of the settlement class have the same or similar grievances. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Here, Plaintiffs' claims and those of the Settlement Class members arise from the same course of conduct by UKG. Plaintiffs' claims are typical because they, like all members of the proposed Settlement Class, have

alleged injuries and damages as a result of UKG's uniform conduct to adequately safeguard information and provide reliable services. Accordingly, by pursuing their own claims in this matter, Plaintiffs will necessarily advance the interests of the Settlement Class. Thus, Plaintiffs' claims are typical because they arise "from the same event or practice or course of conduct that gave rise to the claims of other class members and h[er] claims were based on the same legal theory." *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (internal citations omitted).

### 3.   **Adequacy**

The final requirement of Rule 23(a) is that the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A plaintiff and class counsel will adequately represent the Class where they: (1) do not have conflicts of interests with other Class Members; and (2) prosecute the action vigorously on behalf of the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003). Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-length. *See Newberg,* § 11.28, at 11-59. Here, Plaintiffs, like every Settlement Class Member, were impacted by the December 2021 Cyberattack.  Moreover, those in the Exfiltration Subclass experienced the exfiltration of their personal data.  Plaintiffs and Settlement Class Members thus have the same interest in recovering the damages to which they are entitled. Plaintiffs and their counsel do not have any interests antagonistic to those of the proposed Settlement Class, and their pursuit of this litigation is clear evidence of that.

Likewise, proposed Class Counsel have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Gallucci Decl. Ex. 5; Korovilas Decl. ¶¶ 7-11; Morrison Decl. ¶¶ 2-6; Lebe Decl. ¶¶ 3-15. Proposed Class Counsel regularly engage in major complex litigation involving various consumer protection laws and data privacy and breach cases, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. *Id.*  Further, proposed Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, conducting informal and formal discovery, participating in private mediation, and negotiating a favorable class action settlement. *See gen.* Gallucci Decl.; Korovilas Decl. ¶¶ 2-6, 11-16; Morrison Decl. ¶¶ 7-17. In sum, proposed Class Counsel has vigorously prosecuted this

action and will continue to do so throughout its pendency. As result of their zealous efforts in this case, proposed Class Counsel has secured substantial monetary relief to the Settlement Class.  Thus, the Court should appoint Plaintiffs' counsel as Class Counsel.

### B.      The Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently, which protects class members' due process rights. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

Here, as to predominance, Plaintiffs' allegations center around UKG's inadequate security measures and the resulting interruption of the KPC applications following the December 2021 KPC Cyberattack. Moreover, as noted above, common questions of law and fact exist in this case. *See supra* § VI.A(2). As to superiority, Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations. Employing the class device here will not only achieve economies of scale for Settlement Class Members but will also conserve judicial system resources and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. *See Hanlon*, 150 F.3d at 1023.

### VIII.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

Pursuant to Rule 23(c)(2)(B), the notice must provide:

the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the

> court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed Notice will provide detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request a Fee Award, seek Litigation Costs and Service Awards for the Class Representatives; and (3) a detailed explanation of the Released Claims. Settlement ¶ 63. The Notice will also provide information about the Fairness Hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (and the deadlines and procedure for doing so), and how to receive additional information. *Id.* ¶¶ 62. In short, the Notice Plan will fully inform Class Members of the lawsuit and the proposed Settlement, and provide them with the information necessary to make informed decisions about their rights. *See* Gallucci Decl., Exs. 2-4; Finegan Decl. ¶¶ 13-33 & Ex. B-C; Fenwick Decl. ¶¶ 4-11; Settlement ¶¶ 61-63; *see also* Section IV(G)-(H).

The Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and due process. Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice," and access to important Court documents, upcoming deadlines, including changes to those deadlines, and the ability to file claim forms online, and will also provide a Toll-Free Number. Finally, the Settlement Administrator will provide notice to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *See id.* ¶ 5.1(f). *See* Gallucci Decl., Exs. 1-4; Finegan Decl. ¶¶ 13-33 & Exs. B-C; Fenwick Decl. ¶¶ 4-11; Settlement ¶¶ 61-63; *see also* Section IV(G)-(H). These proposed methods for providing Notice to the Class comport with both Rule 23 and due process, and the Notice Plan should thus be approved.

## X.   CONCLUSION

Plaintiffs respectfully request that the Court preliminary approve the Settlement, certify the Settlement Class, appoint Plaintiffs' counsel as Class Counsel and the named Plaintiffs as Class Representatives, order dissemination of Notice and set a date for the Final Approval Hearing.

DATED: April 28, 2023

Respectfully submitted,

*/s/ Kas L. Gallucci*
Kas L. Gallucci
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON

-25-

*ron@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**ALEXANDER MORRISON & FEHR LLP**
Michael S. Morrison
Erin Lim
1900 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310-394-0888
Fax: (310) 394-0811
mmorrison@amfllp.om
elim@amfllp.com

**WUCETICH KOROVILAS LLP**
Jason M. Wucetich
Dimitrios V. Korovilas
222 N. Pacific Coast Highway Suite 2000
El Segundo, CA 90245
Tel: (310) 335-2001
Fax: (310) 364-5201
jason@wukolaw.com
dimitri@wukolaw.com

**LEBE LAW**
Jonathan Michael Lebe
Zachary Taylor Gershman
Nicolas W. Tomas
777 S. Alameda Street, Second Floor
Los Angeles, CA 90021
Tel: (213)444-1973
jon@lebelaw.com
zacary@lebelaw.com
nicolas@lebelaw.com

***Attorneys for Plaintiffs and the Proposed Classes***