Jonathan M. Lebe, State Bar No. 284605
Jon@lebelaw.com
Zachary Gershman, State Bar No. 328004
Zachary@lebelaw.com
**Lebe Law, APLC**
777 S. Alameda Street, Second Floor
Los Angeles, CA 90021
Telephone: (213) 444-1973

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE UKG INC CYBERSECURITY LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br>All Actions. | Case No.: 3:22-cv-00346-SI<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES**<br><br>**Date: November 17, 2023**<br>**Time: 10:00 a.m.**<br>**Dept.: Courtroom 1, 17th Floor**<br>**Judge: Honorable Susan Illston** |

-1-

*In re UKG Cybersecurity Litigation*, No. 3:22-CV-00346-SI
NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on November 17, 2023 at 10:00 a.m., or as soon thereafter as the Court is available, in the courtroom of the Honorable Susan Illston, located at Courtroom 1 – 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs William Muller, Antonio Knezevich, Adam Bente and Cindy J. Villanueva (collectively "Plaintiffs"), will and hereby do move for entry of an Order finally approving the class-action Settlement Agreement and Release ("Settlement Agreement") filed herewith and previously in the above-captioned action at ECF No. 68-2

This Motion is made on the grounds that terms of the proposed Settlement are fair and reasonable. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Order Granting Final Approval of the Class Action Settlement (the "[Proposed] Final Approval Order"). This Motion is based on the Memorandum of Points and Authorities in Support of Final Approval, the Declaration of Jonathan M. Lebe of Lebe Law, APLC; the Declaration of Kas L. Gallucci of the Law Offices of Ronald A. Marron; the Declaration of Michael S. Morrison of Alexander Morrison & Fehr LLP; the Declaration of Dimitrios Korovilas of Wucetich Korovilas LLP; the Declaration of Jeanne C. Finegan of Kroll Settlement Administration, LLC (the "Finegan Decl.") and attached exhibits; the Declarations of Counsel and the attached exhibits submitted in support of Preliminary Approval Dkt. Nos. 68-1 – 68-9 as well as the Motion for Attorneys' Fees at Dkt. Nos. 76; the [Proposed] Final Approval Order; the pleadings and papers on file in this Action; and such other evidence and argument as may subsequently be presented to the Court.

Dated: October 17, 2023

**LEBE LAW, APLC**

By: /s/ Jonathan M. Lebe
　　Jonathan M. Lebe
　　Zachary T. Gershman
　　Attorneys for Plaintiffs and the Proposed Class

-2-

*In re UKG Cybersecurity Litigation*, No. 3:22-CV-00346-SI
NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**ALEXANDER MORRISON & FEHR LLP**
Michael S. Morrison
Erin Lim
1900 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310-394-0888
Fax: (310) 394-0811
mmorrison@amfllp.om
elim@amfllp.com

**WUCETICH KOROVILAS LLP**
Jason M. Wucetich
Dimitrios V. Korovilas
222 N. Pacific Coast Highway Suite 2000
El Segundo, CA 90245
Tel: (310) 335-2001
Fax: (310) 364-5201
jason@wukolaw.com
dimitri@wukolaw.com

-3-

*In re UKG Cybersecurity Litigation*, No. 3:22-CV-00346-SI
NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## STATEMENT OF THE ISSUES TO BE DECIDED

2          Pursuant to Local Rule 7-4(a)(3) of the Civil Local Rules, Plaintiffs set forth the following

3  Statement of Issues to be Decided:

4          1. Whether the Court should certify, pursuant to Federal Rules of Civil Procedure 23(a) and

5  23(b)(3), the **Nationwide Class** consisting of "all natural U.S. persons who are current or former

6  employees or contractors, including their dependents, of UKG customers, whose data was stored in

7  the KPC at the time of the December 2021 KPC Cyberattack and who were impacted by the

8  interruption of KPC applications resulting from the December 2021 KPC Cyberattack;" a **California**

9  **Subclass** consisting of "all members of the Nationwide Class who are also California residents at

10  the time of the December 2021 KPC Cyberattack;" and an **Exfiltration Subclass** consisting of "all

11  members of the Nationwide Class who were sent notice that their personal data was exfiltrated during

12  the December 2021 KPC Cyberattack and were offered credit monitoring services for themselves or

13  on behalf of their dependents;" and appoint William Muller, Antonio Knezevich, Adam Bente, and

14  Cindy Villanueva as representatives for the Settlement Class and appoint Michael S. Morrison and

15  Erin Lim of Alexander Morrison & Fehr LLP;  Dimitrios Korovilas and Jason Wucetich of Wucetich

16  Korovilas LLP; Ronald A. Marron, Alexis M. Wood, and Kas L. Gallucci of Law Offices of Ronald

17  A. Marron; and Jonathan M. Lebe and Zachary T. Gershman of Lebe Law, APLC as Class Counsel

18  for the purpose of the Settlement; and

19          2. Whether the Settlement should receive final approval under Rule 23(e)(2) because

20  Settlement is fair, reasonable, and adequate.

21

22

23

24

25

26

27

28

*In re UKG Cybersecurity Litigation*, No. 3:22-CV-00346-SI

NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

    A.  Factual Background ................................................................................. 3

    B.  Preliminary Approval and Class Notice .................................................. 4

III.    THE TERMS OF THE PROPOSED SETTLEMENT .................................... 6

    A.  Class Definition ...................................................................................... 6

    B.  Monetary Relief For Class Members Following Notice ......................... 7

    C.  Prospective Relief Agreed to by Defendant ........................................... 8

    D.  Release .................................................................................................... 9

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED AS PART OF
APPROVAL OF THE SETTLEMENT AGREEMENT ................................................. 9

    A.  The Class is Sufficiently Numerous ....................................................... 9

    B.  The Commonality Requirement is Met ................................................. 10

    C.  The Typicality Requirement is Met ...................................................... 10

    D.  The Adequacy Requirement is Met ...................................................... 11

    E.  The Adequacy Requirement is Met ...................................................... 12

V.      THE SETTLEMENT AGREEMENT SHOULD BE GIVEN FINAL APPROVAL 13

    A.  Strength of Plaintiffs' Case .................................................................. 14

    B.  Risk, Expense, Complexity, and Likely Duration of Further Litigation ........... 14

    C.  Risk of Maintaining Class Action Status .............................................. 16

    D.  The Amount Offered in Settlement ...................................................... 16

    E.  The Extent of Discovery ....................................................................... 18

F.   Experience and View of Counsel.................................................................. 19

G.   Presence of a Government Participant....................................................... 19

H.   The Reaction of Class Members ................................................................ 20

I.   The Success of the Notice Program ........................................................... 20

VI.  Other Matters at Final Approval ................................................................ 22

A.   Service Awards ............................................................................................ 22

B.   Attorneys' Fees and Expenses ................................................................... 23

VII.  CONCLUSION ................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001)......................................................................................... 10

*Betorina v. Randstad US, L.P.*,
   2017 WL 1278758  (N.D. Cal. Apr. 6, 2017) ............................................................ 20

*Boyd v. Avanquest N. Am., Inc.*,
   2015 WL 4396137 (N.D. Cal., July 17, 2015) .......................................................... 10

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ............................................................................. 19

*Briseno v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021)..................................................................................... 13

*Cellphone Termination Fee Cases*,
   186 Cal. App. 4th 1380 (2010)..................................................................................... 22

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004)......................................................................................... 20

*Clark v. Am. Residential Servs. LLC*,
   175 Cal. App. 4th 785 (Cal. App. 2009) ..................................................................... 22

*Consolidated Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ............................................................................................. 9

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
   926 F.3d 539 (9th. Cir. 2019)......................................................................................... 9

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........... 14

*Giroux v. Essex Property Trust, Inc.*,
   2019 WL 1207301  (N.D. Cal. March 14, 2019) ...................................................... 18

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) .......................................................................... 12, 13

In *Hashemi v. Bosley, Inc.*, (RAOx),

    2022 WL 18278431 (C.D. Cal. Nov. 21, 2022) ..................................................... 18

*In re Anthem, Inc. Data Breach Litig.*, 3

    27 F.R.D. 299 (N.D. Cal. 2018) ........................................................................... 18

*In re Apple Computer Sec. Litig.*,

    No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ..................... 16

*In re Bluetooth Headset Prod. Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011) ............................................................................... 13

*In re Heritage Bond Litig.*,

    546 F.3d 667  (9th Cir. 2008) .............................................................................. 13

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F.3d 454, 459 (9th Cir. 2000) ....................................................................... 18

*In re Netflix Privacy Litig.*,

    No. 5:11-cv-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................ 16

*In re Omnivision Techs., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... 19

*In re Premera Blue Cross Customer Data Security Breach Litigation*,

    2019 WL 3410382 (D. Ore. July 29, 2019) ......................................................... 18

*In re Target Corp. Customer Data Sec. Breach Litig.*,

    MDL No. 14–2522 (PAM), 2017 WL 2178306  (D. Minn. Nov. 17, 2015) .............. 18

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,

    2016 WL 6902351  (N.D. Ga. Aug. 23, 2016) ................................................. 18, 21

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*,

    2017 WL 2212780,  (N.D. Cal. May 17, 2017) ...................................................... 20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811 (N.D. Cal. July 22, 2020)

    .......................................................................................................................... 18, 22

*In re: Equifax, Inc. Customer Data Sec. Breach Litig.*,

    2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ............................................................... 18

*Knapp v. Art.com, Inc.*,

    283 F. Supp. 3d 823 (N.D. Cal. 2017) ..................................................................... 16

*Larsen v. Trader Joe's Co.*,

    No. 11-cv-05188-WHO, 2014 WL 3404531 N.D. Cal. July 11, 2014) ................................ 15, 16

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234, 1242 (9th Cir. 1998) ...................................................................... 17

*Martin v. Sysco Corp.*,

    2019 WL 3253878 (E.D. Cal. July 19, 2019) ............................................................ 20

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 15, 20

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty of San Francisco*,

    688 F.2d 615 (9th Cir. 1982) ............................................................................. 14

*Perdue v. Hy-Vee, Inc.*,

    550 F.Supp.3d 572 (C.D. Ill 2021) ...................................................................... 18

*Ramirez v. TransUnion LLC*,

    951 F.3d 1008 (9th Cir. 2020) ........................................................................... 11

*Ries v. Arizona Beverages USA LLC*,

    287 F.R.D. 523 (N.D. Cal. 2012) ....................................................................... 10

*Rodriguez v. West Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ............................................................... 14, 15, 16, 19

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) ......................................................................... 10, 11

*Torrisi v. Tucson Elec. Power Co.*,

    8 F.3d 1370 (9th Cir. 1993) .............................................................................. 13

*Van Vranken v. Atl. Richfield Co.*,

    901 F. Supp. 294 (N.D. Cal. 1995) ...................................................................... 22

*Vaquero v. Ashley Furniture Indus., Inc.*,

    824 F.3d 1150 (9th Cir. 2016) ............................................................................. 12

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004) ............... 14

*Newberg on Class Actions* ................................................................................ 11

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................... 9

Fed. R. Civ. P. 23(a)(2) .................................................................................... 10

Fed. R. Civ. P. 23(a)(3) .................................................................................... 10

Fed. R. Civ. P. 23(a)(4) .................................................................................... 11

Fed. R. Civ. P. 23(b)(3) ................................................................................. 9, 12

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 5, 20

Fed. R. Civ. P. 23(e)(1) .................................................................................... 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs William Muller, Antonio Knezevich, Adam Bente, and Cindy Villanueva (collectively "Plaintiffs"), by and through proposed Class Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.  Under the Settlement's terms, which was given preliminary approval by this Court on June 2, 2023, Defendant UKG, Inc. ("Defendant" or "UKG") will establish a non-reversionary cash Settlement Fund in the amount of $5,500,000 (and up to $6,000,000), which will be used to pay all approved claims by Settlement Class Members, Settlement Administration Expenses, Court-approved Service Awards to Plaintiffs, and a Fee Award and Litigation Costs to proposed Class Counsel to the extent awarded by the Court.[2]  UKG has also committed approximately $1,500,000 in security hardening measures.

In this consolidated putative class action, Plaintiffs allege that Defendant maintained inadequate security measures and as a result suffered a ransomware attack to part of its Kronos Private Cloud ("KPC").  In response to that attack, UKG took its entire KPC offline, which caused disruption to payroll computing services and inconvenience which equated to monetary loss and lost time to employees and/or contractors of UKG's customers.  Additionally, with respect to two of their customers, UKG confirmed the cyberattack caused the exfiltration of personal data of employees

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement.  *See* Declaration of Kas Gallucci in Support of Preliminary Approval of Class Action Settlement, Dkt. No. 68-1, Exhibit 1 at Dkt. No. 68-2.  For brevity, citations to the Gallucci Declaration refer back to Dkt. No. 68-1.

[2] The deadline to make a claim passed on October 3, 2023.  Kroll is currently performing its review of all submitted claims to determine their validity and to either approve the claim or allow for a claimant to cure any deficiencies.  Declaration of Jonathan M. Lebe in support of Final Approval ("Lebe Decl."), at ¶ 3.  As discussed on more detail below, as of October 17, 2023, Kroll has determined there are 21,047 Approved Claims valuing approximately $1,857,600.  *Id.*

and/or contractors and their dependents.[3]  Plaintiffs, who at the time were each employees of UKG's various customers, were impacted by the breach and offline KPC. Plaintiffs assert claims on behalf of a nationwide class for negligence, negligence per se, unjust enrichment, declaratory judgement, breach of contract, and common law invasion of privacy.  Plaintiffs also brought claims on behalf of a California subclass for violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, the California Customer Records Act, Cal. Civ. Code § 1798.80 *et seq*., violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., and for invasion of privacy based on the California Constitution, Art. 1, § 1.

Since preliminary approval, Kroll Settlement Administration, LLC ("Kroll"), the appointed notice and settlement administrator, has successfully sent direct postcard notice to the users whose data was exfiltrated, has sent email notice to all employees whose employers voluntarily participated in the email notice campaign, has led a successful notice campaign across different media platforms to encourage Settlement Class Members to submit claims, has mail and emailed reminder notifications, and provided government officials notice as required under the Class Action Fairness Act.  *See* Declaration of Jeanne C. Finegan APR ("Finegan Decl."), at ¶¶ 6-19.  Additionally, UKG has posted to its own website information about the Settlement to direct Class Members to the Settlement Website (https://www.ukg.com/kronos-private-cloud-kpc-settlement); and UKG directly notified each of its clients on July 3, 2023 of the Settlement.  Lebe Decl., at ¶ 3.  To date, over 21,047 Approved Claims have been made by Settlement Class Members, only four (4) Settlement Class Members have requested exclusion[4], and no objections to the Settlement have been made.  Finegan Decl., at ¶ 28.

_____

[3] Discovery revealed that of UKG's approximate 2,000 customers, two entities suffered exfiltration of personal data, which aligns with the data breach letters transmitted on UKG's behalf to the two effected employers/employees. Lebe Decl., at ¶ 4

[4] In addition to the timely three (3) opt outs, one (1) late opt out has been submitted which Plaintiffs' counsel requests that the Court allow.

The response to the Settlement has been extremely positive – with no objectors—delivering tangible and immediate benefits to Settlement Class Members which address all the potential harms of the KPC Data Breach, without protracted litigation and the inherent risks of class action litigation. It delivers a fair, adequate, and reasonable resolution for the Class, and merits final approval. Notably, there are only four (4) exclusions from the Settlement and zero (0) objections, which demonstrates the overwhelmingly positive response from Class Members towards this Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

UKG is a leading provider of human resources, payroll, and workforce management solutions to companies around the globe.  In connection with those services, customers use UKG products to collect, store, and process personnel information and data for their employees.  *See* Dkt. No. 68-1, Gallucci Decl., at ¶ 14.  On June 21, 2022, Plaintiffs Muller, Knezvich, Villanueva and Bente filed a Consolidated Class Action Complaint alleging that due to its lack of adequate cybersecurity measures, UKG suffered a ransomware attack on or around December 11, 2021 on its KPC environment.  Dkt. No. 33.  For two of UKG's customers, the ransomware attack resulted in the exfiltration of personal data of employees and dependents of those employees.  *See* Dkt. No. 68-1, Gallucci Decl., at ¶ 13.  Further, all KPC customers were unable to access the KPC applications for a period of time after the attack, which Plaintiffs allege resulted in damages to employees of UKG's customers.

On August 5, 2022, UKG filed a motion to dismiss the Consolidated Complaint arguing that all of Plaintiffs' claims must fail for several reasons.  Among those reasons, UKG argued that as a third-party workforce management technology provider, it does not have a legal duty to ensure the timely or accurate payment of Plaintiffs' wages.  UKG also argued that Plaintiffs' alleged injuries relating to their personal information (e.g., increased risk of future harm, diminished value, worry and lost time) are not cognizable and are otherwise barred by the economic loss rule.  Dkt. No. 39.

From the outset, the Parties engaged in direct communication regarding early resolution as required by Fed. R. Civ. P. 26.  Plaintiffs early on served formal discovery which was narrowed to informal discovery for the purpose of mediation.  The requests sought information relating to the

size of the putative class, the nature and scope of the underlying incident, and UKG's response. *See* Dkt. No. 68-1, Gallucci Decl., at ¶ 17.  This early discovery as well as various discussions with counsel for Defendant led to a mediation session before Ben Picker, Esq. of Stradley Ronon Stevens & Young LLP on September 9, 2022, via Zoom.  *Id.* at ¶ 18.  Although the mediation was unsuccessful, the Parties continued negotiations with the mediator on an almost daily basis.  *Id.* at ¶ 19.  The Parties ultimately reached an agreement in principle and for the next six months, negotiated a class wide Settlement Agreement and supporting documents (class notice, claim forms, notice/social media plan).  *Id.* at ¶ 20.  The Parties engaged in good faith negotiations, which at all times were at arms' length and culminated in an agreement to settle the case.  *Id.* at ¶ 21.  The Settlement also consists of formal, confirmatory discovery that supports the fairness and adequacy of the Settlement, and which was provided to and analyzed by Plaintiffs' counsel as a condition of Settlement.  *Id.* at ¶¶ 13, 22, 42, 48; Lebe Decl., at ¶ 5.

### B.      Preliminary Approval and Class Notice

On April 28, 2023, Plaintiffs moved for preliminary approval of the class action settlement in this matter.  Dkt. No. 68.  On June 2, 2023, this Court granted preliminary approval of this settlement.  Dkt. No. 74.  This Order appointed Kroll as the notice and settlement administrator tasked with providing notice to the class.

Notice was successfully disseminated to the Class by Kroll, and it was a resounding success on every level.  Finegan Decl., at ¶¶ 5-30. Pursuant to the Settlement Agreement and as ordered by the Court, the Settlement Administrator completed distribution of the direct notices to the members of the Exfiltration Class, completed distribution of the email notice to the employees whose employers voluntarily participated in the email notice program, and provided notice in the form of a targeted advertising campaign to members of the Settlement Class.  Finegan Decl., at ¶¶ 7-16. Additionally, at the direction of counsel, for individuals whose contact information was known, but a claim had not been filed, Kroll sent reminder postcard notices to members of the Exfiltration Subclass, sent reminder email notices to employees of UKG's customers where the employer consented to the transmission, and sent reminder email notices to individuals who registered on the Settlement Website, but had not completed their claim form.  Finegan Decl., at ¶¶ 14, 15, 18.  Kroll

also developed and hosted a dedicated website devoted to this Settlement, https://www.kronosprivatecloudsettlement.com/, which contained the Long Form and Claim Form in both English and Spanish, among all Court documents, maintained a Toll-Free IVR phone line in English and Spanish, and dedicated email address and P.O. Box to receive claims and exclusions, and responded to all Class Member inquiries.  Finegan Decl., at ¶¶ 6, 25-26.  In addition to the efforts of Kroll, per the Settlement Agreement, UKG posted on its own website a link to the Settlement Website and sent an email communication to all of its clients impacted by the KPC outage advising them of the Settlement so they could at their election notify their employees.  Lebe Decl., at ¶ 4.  The multipart notice program was designed to, and did, provide the "best notice that is practicable under the circumstances."  *See* Fed. R. Civ. P. 23(c)(2)(B).

The notice program succeeded.  On July 3, 2023, Kroll caused 19,852 postcard Notices to be mailed via first-claim mail.  Finegan Decl., at ¶ 7; *see also* Dkt. No. 76-4.  Of those 19,852 postcard Notices sent, seventy-seven (77) postcard Notices were returned by the USPS with a forwarding address and all were remailed and 1,343 postcard Notices were returned undeliverable, so Kroll ran them through an advance address search and was about to remail 1,085 postcard Notices.  Finegan Decl., at ¶¶ 8-9.  Of those 1,085 remailed postcard Notices, 121 have been returned undeliverable a second time.  Finegan Decl., at ¶ 9.  Said differently, postcard Notice was sent to 19,473 persons or 98.1% of members of the Exfiltration Subclass.  Finegan Decl., at ¶ 10.  Additionally, at the direction of counsel, on September 22, 2023, Kroll caused 19,109 reminder postcard notices to be sent to all Exfiltration Subclass Members whose mailing address was known and who had yet to file a Claim Form.  Finegan Decl., at ¶ 11.  On August 7, 2023, Kroll caused email Notice to be sent to 40,066 email addresses for Settlement Class Members as provided to Kroll by UKG's customers who voluntarily agreed to participate in notice.  Finegan Decl., at ¶ 13.  Of the 40,066 emails attempted for delivery, 10,074 emails were rejected/bounced back as undeliverable.  *Id.*  On September 21, 2023, Kroll caused reminder email notice to be sent to 3,892 additional email addresses provided by an additional UKG customer.  Finegan Decl., at ¶ 14.  Further, at the direction of counsel, on September 26, 2023, Kroll caused an email reminder Notice to be sent to 29,942 email addresses belonging to Settlement Class Members who were previously sent email Notice and had not

unsubscribed from future emails and who had not yet filed a Claim Form.  Finegan Decl., at ¶ 15.
Also on September 22, 2023, Kroll caused an email reminder to be sent to 20,354 email addresses
belonging to registrants of the Settlement Website, who has not yet submitted a Claim Form.
Finegan Decl., at ¶18.  The reminder postcard and email notices generated an additional 3,254 claims.
Finegan Decl., at ¶¶ 11, 15, 18.

In addition to direct notice, a robust social media and digital advertising campaign targeted
U.S. adults between the age of 18 and 64 who have an annual income of less than $100,000 per year,
are nurses or indicated in their online profiles they are currently or were formerly employed by KPC
customer companies. Finegan Decl., at ¶¶ 5, 20-24. As of the time of filing, an estimated 77% of
potential Settlement Class Members have seen Notice an estimated 1.6 times, as the Notice Plan
served over 306,0245,900 impressions through the advertising campaign.  *Id.*  There have been over
385,000 unique visitors to the Settlement Website and 1,516 calls to the toll-free information line,
further demonstrating the success of the notice program.  Finegan Decl., at ¶¶ 25-26.

## III.   THE TERMS OF THE PROPOSED SETTLEMENT

The key terms of the Settlement are briefly summarized as follows:

### A.   Class Definition

The proposed Settlement consists of the following Classes:

**Nationwide Class**: All natural U.S. persons who are current or former employees or contractors,
including their dependents, of UKG customers, whose data was stored in the KPC at the time of
the December 2021 KPC Cyberattack and who were impacted by the interruption of KPC
applications resulting from the December 2021 KPC Cyberattack.

**California Subclass**: All members of the Nationwide Class who are also California residents at
the time of the December 2021 KPC Cyberattack.

**Exfiltration Subclass**: All members of the Nationwide Class who were sent notice that their
personal data was exfiltrated during the December 2021 KPC Cyberattack and were offered
credit monitoring services for themselves or on behalf of their dependents.[5]

---

[5] Excluded from the Settlement Class are UKG's officers, directors, and employees; any entity in
which UKG has a controlling interest; and the affiliates, legal representatives, attorneys, successors,
heirs, and assigns of UKG. Excluded also from the Settlement Class are members of the judiciary to
whom this case is assigned, their families and members of their staff. Also excluded from the

Settlement ¶ 51.

**B.    Monetary Relief For Class Members Following Notice**

Defendant will establish a non-reversionary cash Settlement Fund of $5,500,000, which will be used to pay all Approved Claims by Class Members, Settlement Administration Expenses, Service Awards to the named Plaintiffs and the Fee Award to proposed Class Counsel, as well as Litigations Costs, to the extent awarded by the Court.  Settlement ¶ 46. The settlement provided that should the number of submitted claims exhausts the $5,500,000, after deduction of Settlement Administrator Expenses, Fee Award and Service Awards, and Litigation Costs, UKG would supplement the Settlement Fund with an additional payment of up to $500,000.  *Id.*  As of October 17, 2023 as Kroll has yet to complete the claims validation process, the total value of the claims is approximately $1.86 million, which is sufficient to fund all Approved Claims without any pro rata reduction in hourly rate of $25/hour for lost time.  As Kroll continues the claims validation process, the value of the Approved Claims may increase, which could cause UKG to provide additional funds not to exceed $500,000.  Class Counsel and Kroll will submit supplemental declarations regarding the claim validation process and value of the claims no later than November 14, 2023.  Lebe Decl., at ¶ 6.

The Settlement allowed the **Nationwide Class** to seek up to $1,000 per person for compensation of ordinary losses in the following non-exhaustive categories: long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), bank fees (documented), credit monitoring (documented), and late fees (documented), and other documented non-wage monetary losses, all of which must be more likely than not caused by and fairly traceable to the December 2021 KPC Cyberattack and subsequent interruption of applications hosted in the KPC.  Settlement ¶ 54(a).  Nationwide Class Members were able to seek up to four hours of lost personal time at $25/hour spent responding to the December 2021 KPS Cyberattack.  Settlement ¶ 54(b).

---

Settlement Class are non-natural persons. Settlement ¶ 52.  Last, Settlement Class Members who properly execute a timely request for exclusion will be excluded. Settlement ¶ 69.

1        In addition to compensation for ordinary losses and lost personal time, those Settlement Class

2  Members who had personal data exfiltrated (the **Exfiltration Subclass**) could seek up to an

3  additional $7,500 of compensation for actual, documented, and unreimbursed monetary loss

4  associated with fraud or identify theft and an additional payment of $100. Settlement ¶¶ 53(b)(ii) &

5  55.  Members of the **California Subclass** also were permitted to claim an additional $30

6  enhancement.  Settlement ¶ 53(b)(ii).

7        Settlement Class Members who wished to receive a cash payment from the Net Settlement

8  Fund also had to submit a valid Claim Form to the Settlement Administrator by the Claims Deadline.

9  Settlement ¶ 56.  The Settlement Administrator has been responsible for reviewing all claims to

10  determine their validity, allow for a cure/deficiency process and for fraud prevention.  Finegan Decl.,

11  at ¶¶ 30-31.  The Settlement Administrator was tasked with, and has rejected any claim that does not

12  comply in any material respect with instructions on the Claim Form (Settlement ¶ 65).  All cash

13  payments will be issued to Settlement Class Members through an electronic or other payment option

14  selected on the Claim Form and will have ninety (90) days to deposit, cash or negotiate the check.

15  Settlement ¶¶ 56 & 66.  Any residual funds not paid out after the expiration of the date of issuance

16  of the distribution shall be paid to the Privacy Rights Clearinghouse, a 501(c)(3) nonprofit

17  organization.  Settlement ¶¶ 26 & 57. Any claims deemed fraudulent by the claims administrator

18  shall be deemed residual funds and distributed as directed above.

19                 **C.**    **Prospective Relief Agreed to by Defendant**

20        UKG also committed to measures to harden the security of the KPC environment impacted

21  by the December 2021 KPC Cyberattack. Settlement ¶ 58. UKG has represented that it has taken

22  and will continue to take security hardening measures which include, for various periods of time

23  depending on the measure: expanding the scanning and monitoring program using insights from its

24  investigation; supplementing UKG's Security Operations Center monitoring with additional third-

25  party managed service monitoring; deploying additional malware scanning tools across all products

26  and UKG's corporate IT environment; and expanding cold storage backups. *Id.* The estimated cost

27  of such measures is in excess of $1,500,000.00.  Settlement ¶¶ 58(a), 46, 48.

28

**D.      Release**

In exchange for the relief described above, Defendant as the "Released Parties" (Settlement ¶ 40) will receive a full release of all claims other than wage claims arising from the December 2021 KPC Cyberattack which were or could have been alleged based on the facts in the operative Complaint.  Settlement ¶ 60.  The full language of the Release is in paragraph 60 of the Settlement. In line with the carve-out in the release, under this Settlement, Class Members cannot make a claim for lost wages.  The claims in the Complaint are the same claims released here.

## IV.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED AS PART OF APPROVAL OF THE SETTLEMENT AGREEMENT

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members.  Fed. R. Civ. P. 23(a); *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 556 (9th. Cir. 2019).  In addition, common questions of law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3)

### A.      The Class is Sufficiently Numerous

Federal Rule of Civil Procedure 23(a)(1) numerosity is satisfied where the number of proposed class members is so numerous that joinder of all members is impracticable. Numerosity is presumed where the plaintiff class contains forty or more members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, there have been 21,047 members of the Settlement Class who have submitted Approved Clams, including 1,036 of the Exfiltration Subclass, making joinder impractical, and satisfying the Rule 23 numerosity requirement.  Finegan Decl., at ¶ 30.

**B.     The Commonality Requirement is Met**

Rule 23(a)(2) requires that the representative plaintiffs' claims contain "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Generally, "a few factual variations among the class grievances will not defeat commonality so long as class members' claims arise from "shared legal issues" or "a common core of salient facts." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation. Plaintiffs allege that the same December 2021 KPC Cyberattack caused injury to all persons who can qualify as Settlement Class members. *See also Boyd v. Avanquest N. Am., Inc.*, 2015 WL 4396137, at *2 (N.D. Cal., July 17, 2015) ("[T]here are questions of law and fact common to all class members, because all bought the same software from Avanquest and suffered the same general type of injury."). As a result, the predominant common question is whether UKG had appropriate security measures in place when the data breach occurred.  Additional common questions include: whether Plaintiffs and Settlement Class members were injured and suffered damages as a result of the KPC Cyberattack, and whether Plaintiffs and Settlement Class members are entitled to monetary damages or other relief?  Courts considering similar claims resulting from uniform conduct routinely certify classes based on evidence of a common policy. *See, e.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012)  ("Courts routinely find commonality in false advertising cases that are materially indistinguishable from the matter at bar," involving consumer products). Further, Plaintiffs' claims are brought under legal theories common to the Class as a whole and that alone is enough to establish commonality.

**C.     The Typicality Requirement is Met**

Rule 23(a)(3) requires that the representative plaintiffs' claims and defenses are typical of those of the proposed class.  Fed. R. Civ. P. 23(a)(3).  The representative plaintiffs' and proposed class members' injuries do not have to be identical, but it is required that "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

Here, Plaintiffs' claims and those of the Settlement Class members arise from the same course of conduct by UKG.  Plaintiffs' claims are typical because they, like all members of the proposed Settlement Class, have alleged injuries and damages as a result of UKG's uniform conduct to adequately safeguard information and provide reliable services. Accordingly, by pursuing their own claims in this matter, Plaintiffs will necessarily advance the interests of the Settlement Class. Thus, Plaintiffs' claims are typical because they arise "from the same event or practice or course of conduct that gave rise to the claims of other class members and h[er] claims were based on the same legal theory." *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (internal citations omitted).

### D.    The Adequacy Requirement is Met

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement rests on two questions: whether the class representatives and their counsel (1) have any conflicts of interest with the proposed class members; and (2) will prosecute the action vigorously on behalf of the class.  *See Staton*, 327 F.3d at 957.

Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-length. *See Newberg on Class Actions,* § 11.28, at 11-59. Here, Plaintiffs, like every Settlement Class Member, were impacted by the December 2021 Cyberattack.  Moreover, those in the Exfiltration Subclass experienced the exfiltration of their personal data.  Plaintiffs and Settlement Class Members thus have the same interest in recovering the damages to which they are entitled. Plaintiffs and their counsel do not have any interests antagonistic to those of the proposed Settlement Class, and their pursuit of this litigation is clear evidence of that.

Likewise, Class Counsel have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Lebe Decl., ¶¶ 8-20, Dkt. No. 76-7 at Ex.1; Dkt. No. 76-2, Declaration of Dimitrios Korvilas, ¶¶ 7-11; Dkt. No. 76-1, Declaration of Michael Morrison, ¶¶ 2-6. Class Counsel regularly engage in major complex litigation involving various consumer protection laws and data privacy and breach cases, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the

country.  *Id.*  Further, Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, conducting informal and formal discovery, participating in private mediation, and negotiating a favorable class action settlement.  *See* Dkt. No. 76-7 at Ex. 1; Dkt. No 76-1 at ¶¶ 2-6, 11-16; Dkt. No. 76-2 at ¶¶ 7-17.  In sum, Class Counsel has vigorously prosecuted this action and will continue to do so throughout its pendency.  As result of their zealous efforts in this case, proposed Class Counsel has secured substantial monetary relief to the Settlement Class.

Thus, the adequacy requirement has been met.

### E.    The Adequacy Requirement is Met

In order to satisfy Federal Rule of Civil Procedure 23(a), at least one prong of Rule 23(b) must also be met.  This is the predominance inquiry test which asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation and whether there is clear justification for handling the dispute on a representative rather than an individual basis.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  Further, Rule 23(b) requires that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

Here, as to predominance, Plaintiffs' allegations center around UKG's inadequate security measures and the resulting interruption of the KPC applications following the December 2021 KPC Cyberattack.  Moreover, as noted above, common questions of law and fact exist in this case.  As to superiority, Plaintiffs and the Settlement Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by Settlement Class Members arising from the same allegations.  Employing the class device here will not only achieve economies of scale for Settlement Class Members but will also conserve judicial system resources and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims.  *See Hanlon*, 150 F.3d at 1023.  Indeed, Plaintiffs have met the predominance test.  *See e.g.*, *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016) (where the plaintiffs'

1   damages stemming from defendant's actions creating legal liability was sufficient evidence to meet

2   predominance requirement).

3        In the context of the proposed Settlement, the requirements of Rule 23 have been met. The

4   Parties therefore request the proposed class be certified as part of the Final Approval process.

5   **V.    THE SETTLEMENT AGREEMENT SHOULD BE GIVEN FINAL APPROVAL**

6        In evaluating a proposed class action settlement under Federal Rule of Civil Procedure 23(e),

7   the standard is whether the settlement "is fundamentally fair, adequate and reasonable." *E.g. In re*

8   *Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008); *Torrisi v. Tucson Elec. Power Co.*, 8

9   F.3d 1370, 1375 (9th Cir. 1993).  When making this determination, the Ninth Circuit has instructed

10  district courts to balance several factors: (1) "the strength of the plaintiff's case;" (2) "the risk,

11  expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class

12  action status throughout the trial;" (4) "the amount offered in settlement;",(5) "the extent of

13  discovery completed and the stage of the proceedings," and (6) "the reaction of the class members

14  to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

15       When, as here, a proposed settlement is negotiated prior to formal class certification, courts

16  must also scrutinize the agreement for "evidence of collusion or other conflicts of interest" including

17  for "subtle signs that class counsel have allowed pursuit of their own self-interests to infect the

18  negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).  *In*

19  *Re Bluetooth* identified three signs of potential collusion: "(1) when counsel receives a

20  disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing

21  arrangement,' under which the defendant agrees not to challenge a request for an agreed upon

22  attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns

23  unawarded fees to the defendant, rather than the class." *Briseno v. Henderson*, 998 F.3d 1014, 1023

24  (9th Cir. 2021) (internal citations omitted).  Moreover, the Court preliminary finding that the

25  Settlement is fair, adequate, and reasonable in light of these factors remains true for the purposes of

26  final approval. *See* Preliminary Approval Order, Dkt. No. 74 at pg. 2.

27

28

**A.     Strength of Plaintiffs' Case**

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009)).

Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories, and defenses on both sides before engaging in arms-length negotiations with Defendant's counsel. *See* Dkt. No. 68-1 ¶¶ 8-22, 40-43, 47-49; Dkt. No. 68-7, ¶¶ 2-6, 13.  Although Plaintiffs and Class Counsel had confidence in their claims, they recognize that a favorable outcome was not assured and that they would face risks at class certification, motion to dismiss, summary judgment, and trial. *See id*.  UKG vigorously denies Plaintiffs' allegations and asserts that neither Plaintiffs themselves nor the Classes suffered any harm or are entitled to damages.  In addition, UKG would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly more than achieved here absent such risks.  The Settlement abrogates these risks to Plaintiffs and the Class.  *See Rodriguez*, 563 F.3d at 965-66 ("[O]ne factor 'that may bear on review of a settlement' is 'the advantages of the proposed settlement versus the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members[.]'") (citing Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004)).

Thus, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.

**B.     Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Next, approval of the proposed settlement is appropriate given the risks associated with continued litigation. By reaching a favorable settlement now, Plaintiffs seek to avoid significant

-14-

expense and delay, and instead ensure recovery for the class. "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("*DIRECTV, Inc.*")) (internal quotation marks omitted). "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Id.*  (citing *Rodriguez*, 563 F.3d at 966).

The Parties engaged in formal and informal discovery prior to mediation, and continued with formal discovery, including confirmatory discovery regarding all aspects of the cybersecurity event. The next steps in the litigation would have been for Plaintiffs to oppose UKG's Motion to Dismiss, engage in expert discovery, and litigate motions for summary judgment and class certification. These next steps would be costly and time-consuming for the Parties and the Court and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. UKG would continue to assert defenses on the merits, including challenging Plaintiffs' standing under California's consumer protection statutes and Plaintiffs' ability to show that UKG's conduct caused Plaintiffs any injury.  Indeed, UKG was successful in getting the Florida action dismissed at the pleading stage. *See* Dkt. No. 68-1, Gallucci Decl. ¶ 27.

UKG would also oppose class certification vigorously and prepare a competent defense at trial. Assuming that Plaintiffs were to survive a motion to dismiss and summary judgment, they would likely face the risk of establishing liability at trial as a result of conflicting expert testimony between their own expert witnesses and UKG's expert witnesses. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury.  The experience of proposed Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain. Additionally, looking beyond trial, UKG could appeal the merits of any adverse decision. Even if Plaintiffs were to prevail at every stage of this litigation, there remains a substantial likelihood that Class Members would not be awarded significantly more than (or even as much as) is offered to them under this Settlement. *See, e.g., In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW,

1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs awarding over $100 million in damages, entering judgment in favor of individual defendants, and ordering new trial for corporate defendant).  In sum, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4.  The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals and provides certainty through monetary compensation and prospective relief.

"Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.*  (citing *Rodriguez*, 563 F.3d at 964).

### C.  Risk of Maintaining Class Action Status

In addition to the risks of continuing the litigation, the Court has not yet certified the proposed Classes and such a determination could be reached only after exhaustive class certification briefing and expensive expert discovery.  Moreover, even assuming that the Court were to grant a motion for class certification, the classes could still be decertified at any time.  *See In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).  From their prior experience, proposed Class Counsel anticipates that, should the Court certify the classes, UKG may appeal the Court's decision through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing.

### D.  The Amount Offered in Settlement

A Court's analysis of whether a settlement amount is reasonable is "an amalgam of delicate balancing, gross approximations, and rough justice."  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017).  Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  Indeed, "it is well-settled law that a proposed settlement may be acceptable even

though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Here, the Settlement structure is designed to provide the most financial compensation for those persons in the Exfiltration Subclass and less funds to members of the Nationwide Class who only experienced ordinary losses. Settlement ¶¶ 53-55. All Nationwide Class Members were permitted to seek compensation for Ordinary Losses up to $1,000 for out-of-pocket expenses and lost time valued at $25/hour for four hours. Exfiltration Subclass Members, however, were <u>also</u> permitted to seek compensation for Extraordinary Losses associated with fraud or identity theft up to $7,500 <u>*and*</u> an additional payment of $100. *Id.* California Subclass Members who attested to being a resident of California during the cyberattack also receive <u>*an additional*</u> payment of $30 as California is a state which provides some of the strongest consumer protection and privacy rights and affords specific statutory damage amounts for those claims. *Id.* While proposed Class Counsel is unable to estimate the payment each Settlement Class Member may receive as that amount is dependent on the financial harm each Class Member claims, Class Counsel has devised a structure to distribute funds to those most affected and ensure no funds revert to UKG. Settlement ¶¶ 5(c) & 57. Given the Exfiltration Class includes less than 20,000 people, proposed Class Counsel believes that all claims should be sufficiently funded. *See* Lebe Decl., at ¶ 7. Additionally, UKG has agreed to provide prospective relief through enhanced hardening measures estimated to be approximately $1,500,000, bringing the maximum Total Economic Benefit to $7,000,000 and up to $7,500,0000 if the auxiliary fund is triggered by Approved Claims.

Overall, this Settlement establishes a settlement fund of at least $5,500,000 to compensate potential Settlement Class Members.[6] The benefits provided compare favorably with the benefits offered in class action settlements involving significantly larger classes, including settlements approved in the Northern District. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318

---

[6] The exact number of Class Members is unknown, but based on discovery, Class Counsel estimates that the number of individuals potentially impacted by the December 2021 KPC Cyberattack could be lower than 7 million. *See* Lebe Decl., at ¶ 47.

(N.D. Cal. 2018) (granting final approval of $115 million settlement to class of roughly 79 million); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 14-MD-02583-TWT, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) (granting final approval of $28.4 settlement to consumer class of roughly 52 million); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14–2522 (PAM), 2017 WL 2178306, at *4 (D. Minn. Nov. 17, 2015) (granting final approval of $23.3 million settlement to consumer class of roughly 110 million); *see also In re: Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *45 (N.D. Ga. Mar. 17, 2020)  (granting final approval of $380.5 million settlement to consumer class of roughly 147 million); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) (granting final approval $117.5 million settlement fund for a class action 194 million persons).

In terms of Class Members' individual recovery amounts, Class Members experiencing an extraordinary loss are eligible to receive up to a total of $8,600 in damages (ordinary loss of up to $1,000 and extraordinary loss of up to $7,500 and an additional $100 payment).  By comparison, in *Giroux v. Essex Property Trust, Inc.*, No. 16-CV-01722-HSG, 2019 WL 1207301, *3 (N.D. Cal. March 14, 2019), the class members' recovery, not including the value of identity theft protection, was approximately $70.  In *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOx), 2022 WL 18278431, *2 (C.D. Cal. Nov. 21, 2022), class members were eligible to receive up to $300 in ordinary expenses and up to $5,000 for extraordinary loss.  With respect to *Perdue v. Hy-Vee, Inc.*, 550 F.Supp.3d 572, 574 (C.D. Ill 2021), class members could seek reimbursement of up to $225 for ordinary expenses and up to $5,000 for extraordinary expenses.  In *In re Premera Blue Cross Customer Data Security Breach Litigation*, No. 3:15-md-2633-SI, 2019 WL 3410382 (D. Ore. July 29, 2019), class members were eligible to receive up to $10,000 for losses attributable to the data breach.  Thus, the potential individual recovery amounts are commensurate with other settlements.

### E.    The Extent of Discovery

Courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Plaintiffs, though counsel, have conducted extensive research into the legal theories,

discovery, and investigation, including informal and then formal discovery. The Parties also held numerous discussions regarding Plaintiffs' allegations, discovery, and the prospects of settlement, as well as a fulsome mediation session with Mr. Picker.  *See* Dkt. No. 68-1, Gallucci Decl. at ¶¶ 13-22, 46-48.   Moreover, following settlement, Defendant produced substantial confirmational discovery, which allowed Plaintiffs and their Counsel to further verify their representations on which the settlement in this action was based.  Lebe Decl., at ¶ 5.

### F.  Experience and View of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[a]ttorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal., 1979; *see also Rodriguez* 563 F.3d at 967 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation, including data breaches and employment cases. *See* Dkt. No. 76-7, Dkt. No. 76-2 at ¶¶ 7-11; Dkt. No. 76-1 at ¶¶ 2-6; Lebe Decl., at ¶¶ 8-20.

Based on their experience, proposed Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

### G.  Presence of a Government Participant

Another factor considered by Courts is the presence of a government participant in a class action settlement. The Settlement Administrator has provided governmental officials the requisite notice of the proposed settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, however, none has taken any action.  Finegan Decl., at ¶ 6.  As a result, because there are no governmental participants in this case or in the Settlement, this factor does not apply. *Betorina v.*

1  *Randstad US, L.P.*, 2017 WL 1278758, at \*9 (N.D. Cal. Apr. 6, 2017); *see also Martin v. Sysco*

2  *Corp.*, 2019 WL 3253878, at \*6 (E.D. Cal. July 19, 2019).

3          **H.**    **The Reaction of Class Members**

4          The Court should consider the reaction of class members to the proposed settlement when

5  determining the Settlement's fairness.  *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir.,

6  2004).  "It is established that the absence of a large number of objections to a proposed class action

7  settlement raises a strong presumption that the terms of a proposed class action are favorable to the

8  class members."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal.

9  2004) (collecting cases).

10          While the notice program reached an estimated 77% of potential Settlement Class Members,

11  and 21,047 Settlement Class Members have been approved as valid, as of October 17, 2023, only

12  three valid (and one late) requests for exclusion were received and no objections to the Settlement

13  have been filed.  Finegan Decl., at ¶¶ 5, 18, 30.  This is an incredibly low rate of exclusion, and

14  Courts routinely grant settlements with far higher rates.  *See, e.g., Churchill Village v. Gen. Elec.*,

15  361 F.3d 566, 577 (9th Cir. 2004) (affirming final approval when 0.56% of the class opted out); *In*

16  *re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, MDL No. 2672

17  CRB (JSC), 2017 WL 2212780, at \*10 (N.D. Cal. May 17, 2017) (approving a settlement with a

18  0.11% opt out rate).

19          Thus, with no objections, and an incredibly low rate of exclusions, the reaction of Class

20  Members has been extraordinarily positive.

21          **I.**    **The Success of the Notice Program**

22          Rule 23 requires that prior to final approval, "[t]he court must direct notice in a reasonable

23  manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  For

24  classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is

25  practicable under the circumstances, including individual notice to all members who can be

26  identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Rule provides, "notice may

27  be by one or more of the following: United States mail, electronic means, or other appropriate means."

28  *Id.*

Kroll has carried out a thorough individual notice campaign to the Exfiltration Class Members, while providing an advertising campaign for all other Settlement Class Members. Finegan Decl., at ¶¶ 5-26.  Kroll provided individual notice to Exfiltration Class Members via postcard Notice and email notice to those whose contact information was provided to Kroll through the worksite employers of the class members who voluntarily participated in the email notice program. Finegan Decl., at ¶¶ 7-15  In all Kroll provided physical notice to 19,852 Exfiltration Class Members, with 98.1% delivered.  Finegan Decl., at ¶ 10   Kroll also provided 43,958 email notices to Settlement Class Members whose employers voluntarily participated in the email notice program. addresses for this group and thereafter sent such emails notices to this same group.  Finegan Decl., at ¶¶ 13-18. Further to supplement notice, UKG notified all effected customers of the Settlement via email on July 3, 2023, directing UKG's customers to the Settlement Website and UKG posted a link to the Settlement Website on its own website.  Lebe Decl., at ¶ 4.

In addition to individual notice, Kroll also carried out a robust Internet Notice Campaign which led Class Members to a Settlement website.  The Settlement Website contains the "long form notice" in English and Spanish, and access to important Court documents, upcoming deadlines, including changes to those deadlines, the ability to file claim forms online, and also provided a Toll-Free Number with IVR in English and Spanish. Finegan Decl., at ¶¶ 6, 25-26. The notice campaign has also included targeted banner advertising on a selected advertising network and social media, which are targeted to Settlement Class Members.  *Id. ¶¶* 5, 20-24.  Per Kroll's internal database, this targeted campaign which served over 306,245,900 impressions generated approximately 385,000, unique users who reviewed the Settlement Website.  *Id. ¶¶* 5, 25.  Moreover, Kroll also received to 1,516 total calls from Class Members, totaling 5,028 minutes.  *Id.* ¶ 26.

As of October 17, 2023, 1,036 claims have been submitted by Exfiltration Subclass Members have been approved, representing a claim rate of 5.2% for the Exfiltration Subclass. Finegan Decl., at ¶ 30.  Moreover, there are an additional 19,122 Approved Claims for the Settlement Class.  *Id.* While there are class-action settlements that have realized higher claim rates, others have been approved with similar rates. *See e.g. In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 U.S. Dist. LEXIS 200113, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (approving data

breach class action settlement with 0.00031% claims rate); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811 (N.D Cal., July 22, 2020) (approving data breach class action settlement with about a .6% claims rate.).

The proposed Notice Plan implemented by Kroll has represented the best notice practicable. The plan was reviewed and analyzed to ensure it meets the requisite due process requirements. Finegan Decl., at ¶ 33.   The Notice Plan is consistent with, and exceeds, other similar court-approved notice plans, the requirements of Fed. Civ. P. 23(c)(2)(B), and the Federal Judicial Center ("FJC") guidelines for adequate notice.

As there is no alternative method of notice that would be practicable here or more likely to notify Class Members, the proposed Notice plan constitutes the best practicable notice to Class Members and complies with the requirements of Due Process.

## VI.   Other Matters at Final Approval

### A.   Service Awards

Subject to Court approval, in recognition for the efforts of Plaintiffs William Muller, Antonio Knezevich, Adam Bente, and Cindy Villanueva, on behalf of the Settlement Class, Plaintiffs will seek incentive awards of up to $7,500 each from the Settlement Fund. Service payments "compensate class representatives for work done on behalf of the class, [and] to make up for the financial or reputational risk undertaken in bringing the action." *Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1393–94, 113 Cal. Rptr. 3d 510, 521 (2010), as modified (July 27, 2010). Plaintiffs "should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class." *Clark v. Am. Residential Servs. LLC*, 175 Cal. App. 4th 785, 806 (Cal. App. 2009).  Factors to be considered in granting a service award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort expended by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Here, Plaintiffs have spent time on this action, have assisted with the investigation of this action, the drafting of their individual complaints and the Consolidated

Complaint.  Plaintiffs have assumed the risk associated with being a class representative and have been in contact with counsel frequently and have stayed informed of the status of the action, including Settlement.  *See* Dkt. Nos. 76-3, 76-5, 76-8, 76-8.   The Settlement is not expressly contingent upon the amount of any Service Award.  Settlement ¶ 75.  The service payments sought here are no more than the amounts available pursuant to the Settlement for Class Members who experienced extraordinary losses.

### B.   Attorneys' Fees and Expenses

UKG has agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees ("Fee Award"), not to exceed one-third of the total Settlement Fund, and for Litigation Costs, not to exceed $50,000, in an amount to be approved by the Court.  Settlement ¶¶ 31, 32 & 74.  There is no clear sailing agreement.  Settlement ¶ 9.1.  Further, approval of the Settlement is expressly not contingent upon approval of Plaintiffs' request for fees and expenses. Settlement ¶ 74.

On August 14, 2023, Plaintiffs petitioned the Court for a Fee Award of $2,000,000, and for reimbursement of total Litigation Costs in the amount of $27,076.33.  Dkt. No. 76.  This attorney fee request was based upon an approximate lodestar calculation of $1,221,733.00 including total attorney hours of approximately 1,774.4 through the filing of the motion for attorneys' fees.  Dkt No. 76 at p. 13.   Since then, and through Final Approval, and including hours that Plaintiffs' attorneys expect to expend in resolving administration of the class action settlement, Class Counsel has expended 1908.2 hours, amounting to a lodestar of $1,311,066.  *See* Declaration of Kas Gallucci in Support of Final Approval. ¶ 5; Declaration of Jonathan M. Lebe in Support of Final Approval, ¶ 21-27; Declaration of Michael Morrison in Support of Final Approval ¶ 4; Declaration of Dimitrios v. Korovilas, ¶ 15.  This lodestar amounts to an approximate multiplier of 1.53.  *Id.;* Lebe Decl. ¶ 28.  Moreover, Class Counsel has expended an additional $30 in costs for Deadlines.com fees, putting Plaintiffs' request for reimbursement of total Litigation Costs to $27,163.33.  (Declaration of Kas Galluci in Support of Final Approval, ¶ 6.

///
///

## VII.    CONCLUSION

For the reasons outlined above, the proposed Settlement is fair, reasonable, and adequate. The Parties therefore respectfully request that the Court grant final approval.

DATED: October 17, 2023

Respectfully submitted,

*/s/ Jonathan M. Lebe*

**LEBE LAW, APLC**
Jonathan Michael Lebe
Zachary Taylor Gershman
777 S. Alameda Street, Second Floor
Los Angeles, CA 90021
Tel: (213)444-1973
jon@lebelaw.com
zachary@lebelaw.com

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**ALEXANDER MORRISON & FEHR LLP**
Michael S. Morrison
Erin Lim
1900 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310-394-0888
Fax: (310) 394-0811
mmorrison@amfllp.com
elim@amfllp.com

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI

*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**WUCETICH KOROVILAS LLP**
Jason M. Wucetich
Dimitrios V. Korovilas
222 N. Pacific Coast Highway Suite 2000
El Segundo, CA 90245
Tel: (310) 335-2001
Fax: (310) 364-5201
jason@wukolaw.com
dimitri@wukolaw.com

*Attorneys for Plaintiffs and the Proposed Classes*